[Civ. No. 310.   First Appellate District.—December 8, 1905.]

In the Matter of the Guardianship of LIZZIE GALLEHER, a Minor.   MARY MARSHALL, Respondent; FRED W. GALLEHER, Appellant.

GUARDIANSHIP OF CHILD—RIGHTS OF FATHER—CUSTODY GIVEN TO AUNT. The father of a child aged three years, whose mother is dead, if a fit and competent person, is entitled to its guardianship in preference to any other person, including a maternal aunt of the child to whom the father had given its custody.

ID.—ORAL AGREEMENT FOR CUSTODY REVOCABLE.—An oral agreement, whereby a father has given his child to another person to raise, is revocable at any time.

ID.—FINDINGS AS TO UNFITNESS OF FATHER AGAINST EVIDENCE.—*Held*, upon a review of the evidence, that findings that the father had failed and refused properly to care for his child, that he had deserted and abandoned it, and that he was profligate, indolent, intemperate, and an improper person to be awarded the custody of the child, are unsustained by the evidence.

APPEAL from an order of the Superior Court of Santa Clara County, granting letters of guardianship to the aunt of a child, and refusing letters of guardianship to its father. M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

R. B. Tappan, for Appellant.

J. P. Sex, for Respondent.

HALL, J.—This is an appeal from an order appointing Mary Marshall guardian of the person of Lizzie Galleher, a child aged about three years at the time of the filing of the petition. The appellant, Fred W. Galleher, is the father of the child, and the respondent, Mary Marshall, is its maternal aunt. The mother of the child died when the child was but a few days old, and the father subsequently, under circumstances hereinafter detailed, placed the infant with Mrs. Mary Marshall, where it remained until these proceedings were begun by the filing of a petition in the superior court by Mrs. Marshall for her appointment as guardian

cf the child. It is alleged in the petition of respondent that the child has been abandoned by her father for more than two years last past, and that the father is not a fit, or proper, or competent person to have the care, custody, or control of said minor, in this: that he is shiftless, improvident, and lacks industry, is addicted to drink, and is financially unable to provide for the wants of the said minor, and that he has no reasonable place for the maintenance of said child, and has and will neglect her, and is of bad repute for industry and sobriety. The father of the child filed an answer, wherein he took issue with the above statements of the petitioner, and asked that, if the court found it necessary to appoint a guardian for the child, he be appointed such guardian. The court found that appellant, over three years ago, and when the minor child was of the age of six months, deserted and abandoned the said minor child, and ever since said time has so continued to desert and abandon the said minor child; that he is not a fit, or proper, or competent person to have the care, custody, or control of said minor child; that he is a shiftless and improvident person, without industry, and lacking in integrity and honesty, and having no reasonable place for the maintenance of the said minor child, or a home or a place of abode for said minor child; that from the death of the mother of the child up to the time of the abandonment of the child, when it was six months of age, appellant failed and refused to properly care for said child. The court made other findings along the same lines, tending to sustain the allegation that appellant is not a fit, or proper, or competent person to have the care of his own child. These findings are challenged by appellant as not being supported by the evidence.

It is well settled in this state that a parent is entitled to the guardianship of his child under the age of fourteen years, if he is a fit, proper, and competent person, in preference to any other person. (Code Civ. Proc., sec. 1751; *Guardianship of Salter, a Minor,* 142 Cal. 412, [76 Pac. 51]; *In re Campbell, a Minor,* 130 Cal. 380, [62 Pac. 613].) In the Campbell case, after discussing the provisions of section 1751, of the Code of Civil Procedure, it is said: "The fact of the competency or incompetency of the father was

therefore the controlling question in the case; and, as there is no finding on the point, the findings must be regarded as insufficient to support the order appealed from.'' In the Salter case the court again lays down the rule that the competency or incompetency of the father, where the contest is between the father and a person other than the mother, is the controlling question, and then says: ''Nor is the right of the father, he being competent, to have the custody and control of his child at all affected by the finding of the court relative to the health of the child, and the better opportunity he would have for fresh air and exercise at the home of his grandmother than at the residence of his father.'' The necessity for an affirmative showing as to the incompetency of the father is recognized by respondent, and accordingly, as we have seen, such an allegation is contained in her petition and a corresponding finding made. And the only question presented is as to the sufficiency of the evidence to sustain the findings on that question.

Before taking up a discussion of the evidence upon this point, it may be conceded that the evidence abundantly shows that Mrs. Marshall is in every way a proper person to have the care of the child, and is well able and willing to give her good care, and is evidently much attached to the child. The evidence shows, without contradiction, that about a month after the death of the mother of the child the father removed from San Jose to Alameda, and took the babe with him. On the train he fed her warm milk, and on arriving at Alameda took her to a Mrs. Rafferty, who kept the child for several months, and was paid for so doing by the father. He next put it in charge of a Mrs. Schultz, who kept house for him and cared for the baby. The child became ill and was next placed in the care of a Mrs. Jamison, where it remained until placed in charge of Mrs. Marshall, which was done when the child was six months old, and upon her request and solicitation, three times made, through her brother to Mr. Galleher, the father of the child. There is not one word of evidence that these women who cared for the child in Alameda did not give it good care, or were not good and competent women. One of them, Mrs. Jamison, complains that she was paid but eight dollars for her services; but she does not suggest that the child was

neglected.    There is no contradiction of the testimony that
the father paid the other women for their care of the child.
It was further shown that, when the child was sick in Ala-
meda, it was attended by a physician, for which Mr. Gal-
leher still owes.    The only evidence in the record that the
child was in need of anything when in Alameda is that,
when Mrs. Marshall took her to remove her to San Jose,
she had to buy her a pair of shoes and a bonnet, as the child
did not have any.    We do not think this is sufficient evi-
dence to warrant the finding that from the death of the
mother up to the time of the abandonment of the child,
when it was six months of age, appellant failed and re-
fused to properly care for said child.    It is true that the
child was ill, but no evidence was offered tending to show
that it was neglected during this time.    On the contrary,
it would appear that, considering the circumstances and con-
dition of life of appellant, he provided reasonably good care
for the child.

We now come to a consideration of the finding as to aban-
donment of the child.    As we shall see when we examine the evi-
dence on this point, this finding is based upon the fact that
appellant, at the solicitation of Mrs. Marshall, gave the child
to her to raise, and made no provision for the child's support
by himself, Mrs. Marshall having assumed that charge.    An
agreement, especially if oral, whereby a parent gives his child
to another to raise, is generally held to be revocable at any
time.    (*Weir* v. *Marley,* 99 Mo. 484, [12 S. W. 798] ; *State* v.
*Baldwin,* 5 N. J. Eq. 454, [45 Am. Dec. 397] ; *Child* v. *Dood,* 51
Ind. 484; *Drumb* v. *Keen,* 47 Iowa, 435; *Cook* v. *Bybee,* 24
Tex. 278; *Foulke* v. *People,* 4 Colo. App. 519, [36 Pac. 640] ;
*Brooke* v. *Logan,* 112 Ind. 183, [2 Am. St. Rep. 177, 13 N. E.
669] ; *In re Scarritt,* 76 Mo. 565, [43 Am. Rep. 768].)    Thus
in *Foulke* v. *People, supra,* it was held that a father's agree-
ment to leave his minor child with its aunt has no mutuality,
and is revocable by the father at any time.    In this case the
aunt had had the child for about two years, and had spent
considerable sums of money for her support.    In *State* v. *Bald-
win,* 5 N. J. Eq. 454, [45 Am. Dec. 397], it is said: ''A verbal
agreement by the father committing the child to the care and
custody of another until it should attain its majority is void,
and such child will be restored to its father upon a writ of

*habeas corpus.* That the parents are the natural guardians and *prima facie* are entitled to the custody of their minor children.''

The findings in this case on this point are so drawn as to give the impression that appellant abandoned a sick and helpless child to its fate, and that Mrs. Marshall thereupon took the child to her heart and home and cared for it. Thus finding 19 is in these words: ''That the said child was so abandoned and deserted by the said Fred W. Galleher, was dangerously ill and momentarily expected to die. That in such condition the said child was deserted and abandoned by the said Fred W. Galleher, and was so dangerously ill and its life despaired of when the said Mary Marshall took the said child and nursed and cared for and attended to it, and ministered to its wants and necessities.'' Any person reading this finding, and several like it in the record, would suppose that the father had deserted and abandoned a sick and helpless infant to its fate, and that after being abandoned it was rescued by Mrs. Marshall. Yet the evidence shows beyond question that the child was given by the father into the custody of its maternal aunt, Mrs. Marshall, at her repeated solicitation, to be by her raised as the child of Mr. Galleher. In this regard the evidence is that Mr. Hogan, a brother of Mrs. Marshall, frequently called on Galleher and the baby while it was in Alameda, and, at the request of Mrs. Marshall, on three different occasions requested Mr. Galleher to let Mrs. Marshall have the child. At this time the child was ill, and, though cared for by women against whom no word is spoken, it was not in the care of any woman related to it by the ties of blood. Mrs. Marshall, its aunt, herself the mother of a little girl and able to give the child good care, offered to take it, and, upon the father consenting, came to Alameda and took the child to her home in San Jose. Mrs. Marshall in her testimony makes it perfectly clear that she expected no compensation for her work of love, but expected to herself provide for the child, and, in fact, she did do so. It is also in evidence without contradiction that it was understood that Mr. Galleher should be kept informed of the condition of the child by its aunt or its uncle, Hogan; and it is in evidence without contradiction that Galleher's brother, at his request, frequently visited the child and kept the father advised as to the condition of the child. It is

true that the evidence shows that during the three years the child was in the care of Mrs. Marshall the father did not himself visit it more than three or four times, and did not contribute to its support save to send it trifling gifts at Christmas and birthdays. We do not think this evidence is sufficient to justify a finding that the father deserted and abandoned his child in the sense in which those words are used in the findings. On the contrary, such evidence rather shows that the father was making what at the time was a prudent provision for the care and nurture of his infant.

The evidence also shows without contradiction that ever since Mr. Galleher came to Alameda he has worked as a motorman for the Oakland Transit Company, being a period of three years and three months, earning in such employment $19 per week, that he has worked almost daily during that time, and that he is now married to a woman who testified to her willingness and wish to take the child into her home. It was shown without contradiction that Galleher and his present wife reside in Alameda in a rented five-room cottage, furnished with carpets and beds, and, though not as well off financially as the Marshalls, they are able to support the child. Depositions were read wherein nine residents of Alameda testify that Galleher's reputation in that community for truth, veracity, sobriety, and morality is good. Two of these witnesses are officials of the company for which he works. As against this, one witness testified that during a period of three months, while Galleher rented a portion of her house, she saw him under the influence of liquor: "Once he was a good deal under the influence of it. He plainly showed the signs of liquor." That they [he and his wife] borrowed household necessaries and money. The money was repaid, but the household things were not returned. What they were is not shown. It was also shown that he still owed bills that accrued while he lived at San Jose, consisting of a meat and a grocery bill, as well as for medical attendance and the burial of his deceased wife. This evidence does not justify a finding that Galleher is without industry, or that he has no reasonable place for the maintenance or the abode of his child. His neglect to pay his bills under the circumstances may to some extent indicate that he is lacking in integrity, yet we do not think it is suffi-

2 Cal. App.—24

cient to justify the taking from a father his natural right to the custody of his child.

The general finding that Galleher is not a fit, or proper, or competent person to have the care, custody, or control of his own child is not sustained by the evidence as we have detailed it, and which we think is a fair statement of the evidence. After the death of the mother of the babe at its birth he seems to have made a brave struggle to care for the babe where he could have it with him daily, but after a trial of about six months, when the babe was ill, and upon the solicitation and offer of the aunt of the child, he allowed her to take it. He is now again married, and able to discharge that duty toward his child which the law of God and nature, as well as the law of man, imposes on him. Unless he has been shown to be incompetent to discharge that duty, he should be allowed the right to do so. We do not think he has been shown unfit or incompetent to have the custody of his own child. In examining the evidence in this case we have not overlooked the rule where there is a conflict in the evidence, or where different conclusions may be fairly drawn from the evidence, the appellate court will not interfere with the action of the trial court. But we have considered it in the light of the rule that a father is *prima facie* presumed to be competent to have the care and custody of his child, and can only be deprived of his right by an affirmative showing that he is incompetent. He is not shown to be incompetent by proof that he has some faults, or that he has not been or is not an ideal parent. There must be such a showing as to make it appear that he will probably fail in a substantial degree to discharge his duty toward his child.

For the reasons above set forth the order appealed from is reversed.

Harrison, P. J., and Cooper, J., concurred.