[S. F. No. 10339. In Bank.—December 26, 1923.]

In the Matter of the Guardianship of the Person and Estate of MARGRETTA GREEN, a Minor. GRETTA M. BANKS, Respondent, v. BEULAH GREEN FOOTMAN, Appellant.

[1] GUARDIAN AND WARD—CONTEST FOR LETTERS—FITNESS OF MOTHER —FINDINGS.—In a contest between the mother of a child under fourteen years of age and a stranger to the child for letters of guardianship over the person and estate of the child, the determining factor is the parent's fitness for guardianship at the time of the hearing of the petition for letters of guardianship; and a finding which shows in effect that at the time of the hearing the parent is a fit and suitable person to become the guardian of the

child renders other findings concerning the fitness or unfitness of the parent in the past as mere surplusage.

[2] ID.—FAILURE OF MOTHER TO FURNISH MAINTENANCE—ABILITY TO DO SO—EVIDENCE.—In such a contest, even though the evidence affirmatively shows that the mother of the child did not contribute any substantial sum to the support of her child while it was in the custody of the stranger, nevertheless she did not, for that reason alone, forfeit her right to its custody, where the evidence also shows that owing to her poor health, frequent operations, and necessity of self-support, she at no time until her remarriage, which occurred shortly prior to the hearing of the contest, had the ability to maintain the child.

[3] ID.—FORFEITURE TO RIGHT OF CUSTODY—MAINTENANCE AND ABILITY TO FURNISH.—To constitute a forfeiture of a parent's right to the custody of his child, failure to maintain it must be coupled with ability to do so.

[4] ID. — VOLUNTARY MAINTENANCE OF RELATIVE — ACQUIESCENCE OF PARENT—SUBDIVISION 4, SECTION 246, CIVIL CODE.—The mere acquiescence of a parent in the voluntary maintenance of a child by a relative, when the latter does not request compensation from the parent, does not in itself amount to a failure to maintain, within the meaning of subdivision 4 of section 246 of the Civil Code, which provides that "Any parent who knowingly or willfully abandons, or having the ability so · to do, fails to maintain his minor child under the age of 14 years forfeits the guardianship of such child," and this is so regardless of the ability or disability of the parent in the matter.

[5] ID.—SEVERANCE OF PARENTAL RELATION—DESERTION—INTENTION—ABANDONMENT.—An actual desertion accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same, is necessary to constitute an abandonment on the part of the parent of his child within the meaning of subdivision 4 of section 246 of the Civil Code.

[6] ID.—ABANDONMENT—EVIDENCE.—The practically involuntary placing of a minor child by the mother in the family of the latter's half-sister during a time of physical and financial stress cannot be regarded as an attempt to sever the parental relation.

[7] ID.—CONDUCT OF PARENT.—A parent, if competent, does not lose his right over his child merely because his conduct may at one time have fallen short of what may be described as "ideal."

[8] ID.—CHILD UNDER FOURTEEN YEARS OF AGE—COMPETENCY OF PARENT—ABSENCE OF DISCRETION BY COURT.—If the parent of a child under fourteen years of age is competent and has not abandoned the child or failed to maintain it, having the ability to do so, the court has no choice but to award the child to the parent.

[9] ID.—DISCRETION — JURISDICTION — SUBDIVISION 1 OF SECTION 246, CIVIL CODE.—Subdivision 1 of section 246 of the Civil Code, providing that in awarding the custody of a minor the court is to be guided first by what appears to be for the best interest of the child in respect to its temporal, mental, and moral welfare, operates only where the court is vested with the exercise of discretion, and has no application as between a parent and more distant relative or stranger.

[10] ID. — CONTEST BETWEEN PARENT AND STRANGER — PARAMOUNT ISSUE—WELFARE OF CHILD.—In a contest for guardianship, not between parent and parent, but between a parent and a stranger to the child, the paramount question presented for consideration is whether the parent is competent to fulfill the duties and obligations involved in the relationship, and a finding in the affirmative compels the appointment of the parent as guardian, notwithstanding the fact that apparently the child's material welfare will be best subserved by giving it to another.

APPEAL from an order of the Superior Court of Sonoma County appointing guardian of minor. R. L. Thompson, Judge. Order reversed.

The facts are stated in the opinion of the court.

Henry C. McPike and Clarendon W. Anderson for Appellant.

L. G. Scott and J. T. Campbell for Respondent.

LENNON, J.—This proceeding for the appointment of a guardian of the person and estate of a minor child, Margretta Green, culminated in the court below in an order directing the issuance of letters of guardianship to the respondent, Gretta M. Banks, a half-sister of the mother of the child. The mother, Beulah Green Footman, resisted the petition for guardianship and appeals from the order.

The facts brought forth at the hearing of the petition and pertinent to the point presented upon the appeal, succinctly stated, are these: Neither at the time of the birth of the child nor at any time thereafter did the mother and father live together, and in 1912 the mother obtained a final decree of divorce which awarded to her the custody of the child. The father makes no claim to its custody. Shortly after the birth of the child, in Oakland, appellant, being destitute, went with the child to a ranch in Sonoma County,

where they lived for a time with her family, which consisted of her mother, Mrs. Peterson, a half-brother and three half-sisters. As soon as she felt her strength returning she and the child, her mother, and her half-brother went to Berkeley to live, where her mother, Mrs. Peterson, kept house and cared for the child while appellant worked to support the family. For a part of the time appellant worked in a cannery. The child was taken back to the ranch and cared for by respondent on two occasions, once when Mrs. Peterson was ill and asked respondent to come and get the child, and once when Mrs. Peterson and appellant went to Los Angeles. Upon their return from Los Angeles Mrs. Peterson went to the ranch to get the child, and at that time respondent and her husband objected to the child being moved back and forth so often and insisted that either they or appellant must keep her. Appellant's half-brother testified that when appellant was informed of this she "kind of objected in a way. She said it was pretty hard to give up the little one. . . . We used to talk it over quite a bit, what a nice little girl she was. And she was working, I think, at the Golden West Hotel, and she worked at various places, but she never had, you might say, a home and under those circumstances she admitted lots of time that Margretta was better off where she was." Mrs. Peterson, appellant's mother, testified that when she returned to Berkeley and told appellant of respondent's suggestion, "She studied awhile and said 'Maybe it would be the best thing to do.'" After that appellant went to Iowa to study nursing. Before leaving she went to the ranch where the child was. Evidently there was some conversation concerning the child. However, about the only evidence of this conversation is respondent's statement, "I told her I must have her to raise in my own way. You see that has been ten years ago . . . and I cannot recall the exact conversation and it seems as though my sister answered, 'Of course,' that is, in my mind that she answered 'Of course.'" Leaving her child in her half-sister's care, appellant went to Iowa, where she studied nursing until forced to return to California in 1913 because of ill health. After her return to California, and until December, 1917, appellant underwent a series of serious operations for the purpose of removing a condition brought about by neglect at the time her child was born. The opera-

tion left her in a very weakened condition and unable to work during a great part of the time. Whenever her health would permit she obtained employment, chiefly as a nurse in a physician's office, but, due to the irregularity of these periods, she was scarcely able to earn money enough to support herself. Appellant was twice married, but neither marriage turned out successfully. During neither marriage did appellant have a permanent home nor was she entirely relieved of the necessity of working to support herself. The operation performed in December, 1917, proved successful, and since that date appellant's health has vastly improved. In 1918 appellant was employed as a nurse for the state compensation fund. While in this position she met her present husband, who, in September, 1918, engaged her to care for his home and his two motherless children, in the city of Oakland. In 1920 appellant and Mr. Footman were married, and appellant, having a permanent home for the first time since the birth of her child, wrote to respondent, stating that she and her husband would take Margretta into their home. Respondent thereupon filed the present petition for letters of guardianship. There is some conflict in the evidence as to the number of times that appellant sent gifts to the child. It is an admitted fact in the case that appellant contributed nothing to the child's support, but it also appears that appellant was never requested to do so, and further, that not only did appellant have no permanent home in which to receive the child until her present marriage, but that at no time did she have any funds with which to support the child except that, shortly before the child was left with respondent, she received six hundred dollars in a suit for alienation of affection against the father of her first husband. Part of this money was used to pay the expenses of respondent's wedding, part for a trip which appellant and her mother took to Los Angeles, and part to help pay appellant's expenses while studying at the hospital in Iowa. It appears also from respondent's testimony that from time to time appellant visited the ranch where the child was, and that "she has visited her more frequently the last three years (that is since March, 1918) than before." Appellant herself states that she went to see the child every chance she got and as often as her illness and lack of funds would permit.

This summary of the evidence leads to a consideration of the grounds upon which the court awarded the guardianship to the half-sister of the mother of the child. Section 1751 of the Code of Civil Procedure provides: "The father or mother of a minor child under the age of 14 years, if found by the court competent to discharge the duties of guardianship, is entitled to be appointed a guardian of such minor child, in preference to any other person . . . " Upon the question of the competency of the mother, the court below found "that since contestant's marriage to her present husband, Henry E. Footman, in July, 1920, she has been and now is a fit and suitable person to become the guardian of said minor." Thus there is removed from this appeal all question of the fitness and competency of appellant. [1] In view of this finding, any findings concerning the fitness or unfitness in the past are mere surplusage, for the determining factor in cases of this character is the parent's fitness for guardianship at the time of the hearing of the petition. (*Guardianship of Snowball,* 156 Cal. 240 [104 Pac. 44].) This proposition is not seriously questioned by respondent, who relies primarily for an affirmance of the order appealed from upon the finding that appellant "failed and neglected to contribute in any material extent to its (the child's) maintenance or care, she having the ability to do so; and that contestant at said time abandoned said child, and has thereby forfeited her rights to the custody or guardianship thereof."

We may assume, without deciding, that the findings last quoted would, if supported by the evidence, be sufficient to bring the case within subdivision 4 of section 246 of the Civil Code, which provides that "Any parent who knowingly or willfully abandons, or having the ability so to do, fails to maintain his minor child under the age of 14 years forfeits the guardianship of such child . . . "

[2] We are of the opinion that even though the evidence affirmatively shows, without contradiction, that appellant did not contribute any substantial sum to the support of her child, nevertheless she did not, for that reason alone, forfeit her right to its custody, because the evidence also shows that, owing to her poor health, frequent operations, and necessity of self-support, she at no time until her last marriage had the ability to maintain the child. [3] To

constitute a forfeiture of a parent's right to the custody of his child, failure to maintain it must be coupled with ability to do so. Furthermore, respondent supported the child in the absence of any agreement for reimbursement and without asking appellant to contribute thereto. [4] The mere acquiescence of a parent in the voluntary maintenance of a child by a relative, when the latter does not request compensation from the parent, does not in itself amount to a failure to maintain, within the meaning of the code section above quoted, and this is so regardless of the ability or disability of the parent in the matter. (*Matter of Forrester*, 162 Cal. 493 [123 Pac. 283]; Civ. Code, sec. 208.)

[5] Nor was there any showing of "an actual desertion accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same," which, under the settled rule in this state, is necessary to constitute an abandonment within the meaning of said code section. (*Guardianship of Snowball, supra.*)

The legal principle involved in the case at bar is analogous to that involved and enunciated in the *Estate of Akers*, 184 Cal. 514, 521 [194 Pac. 706, 709], where the court said: "The right of a parent to the custody of its child cannot be held to be forever forfeited by an act of relinquishment committed under circumstances of coercion, caprice, and discouragement."

[6] So likewise in the case at bar, the practically involuntary placing of the appellant's child in the respondent's family during a time of physical and financial stress cannot be regarded as an attempt to sever the parental relation. As stated in *Matter of Galleher*, 2 Cal. App. 364, 367 [84 Pac. 352]: "An agreement, especially if oral, whereby a parent gives his child to another to raise, is generally held to be revocable at any time."

When appellant entrusted her child to respondent she had no other alternative. She herself was unable to care for the child. Appellant's own mother was dependent upon her children and stated to appellant at the time, "I am getting along in years, and I don't feel I could take the responsibility to raise it." It is true that there is evidence from which it might be inferred that appellant was not as attentive to the child, while it was in respondent's house, as some

parents would have been. However, as previously stated, according to respondent's own testimony, when she took the child she distinctly stated that there was to be no interference of appellant in the matter of raising it. This would naturally act as a deterrent upon appellant's intimacy with the child. Also, appellant was hindered by her poverty and sickness. [7] In addition to all this, it must be remembered that a parent, if competent, does not lose his right over his child merely because his conduct may at one time have fallen short of what may be described as "ideal." (*Guardianship of Snowball, supra; Matter of Galleher, supra.*) There is no question as to respondent's fitness to act as guardian. On the contrary, it is conceded that she has given the child a happy home, raised her as one of her own children, and that the child is fond of her. The evidence, the findings and the statement of the court below indicate that the order was based fundamentally not upon the theory of abandonment, but upon the theory that notwithstanding appellant's fitness to receive the child, it would be for the best interest of the child, in respect to her temporal and her mental and moral welfare, for her to remain in her present home. [8] It has, however, been repeatedly held that if the parent is competent and has not abandoned the child or failed to maintain it, having the ability to do so, the court has no choice but to award the child to the parent. (*Campbell v. Wright,* 130 Cal. 380 [62 Pac. 613]; *Guardianship of Salter,* 142 Cal. 412 [76 Pac. 51]; *Matter of Forrester,* 162 Cal. 493 [123 Pac. 283]; *Estate of Akers,* 184 Cal. 514 [194 Pac. 706]; *Guardianship of Mathews,* 169 Cal. 26 [145 Pac. 503].) [9] Subdivision 1 of section 246 of the Civil Code, providing that in awarding the custody of a minor the court is to be guided first by what appears to be for the best interest of the child in respect to its temporal, mental, and moral welfare, operates only where the court is vested with the exercise of discretion, and has no application as between a parent and more distant relative or stranger. (*Campbell v. Wright, supra.*)

We are not unmindful of the temptation to consider the fact that the child is likely to be happier if permitted to remain in the home she has known since babyhood. Such facts must be disregarded, however, where a parent is competent and has not otherwise forfeited his rights. Otherwise

a parent who has been forced to temporarily relinquish his child by adverse circumstances will, through no fault on his part, be penalized by a decree of total forfeiture, and a situation would soon result wherein an affluent stranger or relative would be enabled to arbitrarily deprive a less materially fortunate parent of all right to his most cherished possession.

In this behalf it may not be amiss to emphasize the fact that both the common law and our statutes as interpreted in the cases herein cited declare that the care, custody and control of a minor child, under the age of fourteen years, must be committed to its parent, rather than to strangers, in the absence of a showing that the parent is unfit to perform the duties imposed by the relation, or, by abandonment, has forfeited the natural right to its custody. [10] Accordingly it has come to be the settled rule of law in this jurisdiction that in a contest for guardianship, not between parent and parent, but, as here, between a parent and a stranger to the child, the paramount question presented for consideration is whether the parent is competent to fulfill the duties and obligations involved in the relationship, and a finding in the affirmative compels the appointment of the parent as guardian, notwithstanding the fact that apparently the child's material welfare will be best subserved by giving it to another. (*Estate of Akers*, 184 Cal. 514, 522 [194 Pac. 706].)

The order appealed from is reversed.

Lawlor, J., Wilbur, C. J., Seawell, J., Kerrigan, J., and Waste, J., concurred.

MYERS, J., Dissenting.—I dissent. I think that the evidence is amply sufficient to sustain the finding of the trial court "that contestant [appellant herein] at said time abandoned said child . . . ". This finding is, in my opinion, sufficient to support the judgment appealed from.

The child, who is now nearly fourteen years old, has been in the continuous custody and care of respondent since the age of eleven months. It is conceded that during all of that time the entire burden and responsibility of the custody, care, maintenance, and education of the child has been borne by respondent. It clearly appears from the evidence

that in 1911, when the child was a mere infant, a definite understanding and agreement was entered into between appellant and respondent, whereby appellant relinquished to respondent definitely and finally all of her parental rights over the child, and respondent in turn undertook and agreed to keep and maintain the child and raise it as her own. This agreement was entered into by appellant voluntarily and only after due deliberation. Respondent has kept and performed her part of the agreement faithfully and generously in all respects. This agreement was understood and acquiesced in not only by the immediate parties thereto, but also by respondent's husband, by the child's grandmother, and by other near relatives. It was acquiesced in by appellant without hint or suggestion to the contrary for a period approximating ten years. Then the child, having arrived at an age where it might be regarded as an asset instead of an encumbrance, appellant for the first time indicated a desire to repudiate her agreement and reclaim the child.

This presented a clear case of an actual physical transfer and relinquishment of the custody of the child "accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same." This, in my opinion, constituted an abandonment within the meaning of subdivision 4 of section 246 of the Civil Code.

The facts of this case are essentially different from those under consideration in *Estate of Akers*, 184 Cal. 514 [194 Pac. 706]. In that case the mother never relinquished the child voluntarily. It was forcibly taken from her by the child's father, and she immediately set about its recapture and succeeded therein. It was again forcibly taken from her by the father, and as soon as she was able to do so thereafter, and within four years, and immediately following the death of the father, she again undertook its recapture. In the instant case the child was voluntarily relinquished by the mother with the intention of severing the parental ties, and that intention was adhered to for ten years.

The trial court also found that appellant failed and neglected to contribute to the child's maintenance or care, she having the ability to do so. The evidence upon this point is not satisfactory, but I think it is legally sufficient

to support the finding. It is conceded that appellant did not in fact contribute to the child's support. It is claimed that she was unable to do so by reason of constant illness. But it is conceded that she was sufficiently well to enable her to acquire four successive husbands within a period of about ten years. It is conceded that during this period she was continuously employed as a trained nurse in one household for a period of two years. It is claimed that she received no compensation for this service other than her "keep." Surely the trial judge was not compelled to believe this.

If this decision is to be rested upon the legal right of a parent to the custody and earnings of a minor child, then, by every consideration of the law of contract and by every consideration of the equitable doctrine of estoppel, the appellant herein has transferred that right to the respondent herein.

I think that the judgment should be affirmed.