[Civ. No. 11222. Third Dist. May 27, 1966.]

EASTON L. MOFFITT, Plaintiff and Respondent, v.
JUDITH A. MOFFITT, Defendant and Appellant.

Changaris, Trezza & Ithurburn and Malcolm A. Misuraca
for Defendant and Appellant.

Weis & Huckins for Plaintiff and Respondent.

FRIEDMAN, J.—A wife appeals from that part of an inter-
locutory divorce decree awarding custody of her two children
to her husband. The family had been living in Yuba City. At
the time of the parents' separation in April 1963 the elder
child was 2 years old, the younger 1 year old. At first the
father acknowledged the mother's custody of the children.

Some weeks later he became concerned with the kind of care they were receiving. At the end of May 1963, without his wife's permission, he went to a baby sitter's home, picked up the two babies and brought them to his parents' home in Yuba City, where they have lived ever since.

In June 1963 the father filed a divorce action seeking custody of the children. The mother had difficulty in getting legal representation, primarily because of lack of money. Eventually she was able to get an attorney, who filed a responsive pleading in the divorce case and brought on for hearing an order to show cause which included the question of custody. The custody matter was partly heard in May 1964 and was referred to the probation officer for investigation and report. By this time the mother had moved to Sacramento, where she secured work. She proposed to continue working and, if awarded the children, to utilize a publicly operated day care facility. The probation officer found that she wanted and loved her children; that she went to the grandparents' home monthly to visit them; that her home and that of the grandparents offered equal physical conditions; that her housekeeping standards were excellent. The report gave no indication of unfitness on the mother's part. The probation officer also investigated the situation at the grandparents' home in Yuba City. He recommended that the court award custody to the father and "physical custody" to the father's parents. By the time the probation officer's report was filed, at the end of May 1964, the children had been in their grandparents' home for 12 months.

Counsel for the mother made vain attempts to bring the custody matter on for further hearing but could not get a hearing date until October 1964. At that time there was testimony from the parents regarding their conflicting custody hopes. The father proposed continuation of his parents' home as the children's residence. He testified that he himself came to his parents' home only on weekends, being employed at another location. In November the trial judge filed a brief opinion awarding custody to the father. At the divorce trial the parties stipulated that the evidence relating to custody had not changed. In February 1965 the court signed findings and an interlocutory decree of divorce awarding custody to the father. The court found that award of the custody to the father was in the children's best interests. There was no finding that the mother was unfit; on the contrary, the court found her allegation of fitness was true. By the time the inter-

locutory decree was filed the children had been living with their grandparents for 21 months.

The mother filed a timely notice of appeal; the record on appeal was prepared, appeal briefs filed and the cause set for argument on this court's calendar of May 1966. The elder child is now 5 years old; the younger is 4. The children have now been living with their paternal grandparents for three years. They have no memories of any home other than their grandparents'.

We are called upon to review, perhaps to alter, a custody situation created three years ago, the evidentiary record of which stops approximately 18 months ago. The circumstances do not permit us to apply much wisdom to the case beyond that crystallized in abstract legal doctrine. The appeal is another example of the inappropriateness of standard appellate timetables in child custody cases. Most appeals permit the reviewing court to consider the identical facts which confronted the trial court. In child custody cases the passage of time pending the slow grinding of appellate proceedings inevitably affects the status quo. The longer a custody situation has lasted, the greater the trauma caused by change. Time and familial habit pay scant regard to the legal standards controlling custody awards. They congeal the relationships created by a custody order with no regard for its propriety or impropriety. When the tardy processes of appellate review reach a situation created by an erroneous order, the very act of correction may inflict more damage than that attributable to the incorrect order. A child's need for stability may outweigh vindication of the bereft parent's legal rights.

Five years ago, in *Stack* v. *Stack,* 189 Cal.App.2d 357 [11 Cal.Rptr. 177], a similar dilemma moved the court to complain of the "almost impossible position" of appellate courts in reviewing custody orders and to suggest a reappraisal of judicial techniques in this field. (189 Cal.App.2d at pp. 358, 373; see The California Family Lawyer (Cont. Ed. Bar 1961) vol. 1, p. 588.)

The question on appeal is simple enough. The trial court's custody order contravened the "parental preference" rule which requires that custody of a minor child be awarded to a parent as against a stranger, unless the parent is affirmatively found to be unfit. (*Guardianship of Smith,* 42 Cal.2d 91, 92-93 [265 P.2d 888, 37 A.L.R.2d 867]; *Stewart* v. *Stewart,* 41 Cal.2d 447, 452 [260 P.2d 44]; *Roche* v. *Roche,* 25 Cal.2d 141, 144 [152 P.2d 999]; *Guardianship of Clark,* 217 Cal.App.2d

808, 810-811 [32 Cal.Rptr. 111]; *Guardianship of Turk,* 194 Cal.App.2d 736, 740-741 [15 Cal.Rptr. 256]; *Shea* v. *Shea,* 100 Cal.App.2d 60, 65 [223 P.2d 32]; see tenBroek, *California's Dual System of Family Law: Its Origin, Development, and Present Status,* 16 Stan.L.Rev. 900, 919-927.) ■ Custody may not be given to grandparents over the resistance of a fit parent; an award of nominal custody to a fit parent violates the rule if it has the practical effect of placing care and control in the grandparents, denying it to the other fit parent. (*Roche* v. *Roche, supra,* 25 Cal.2d at p. 144; *Shea* v. *Shea, supra,* 100 Cal.App.2d at pp. 66-67.) ■ Although frequently criticized, the parental-preference rule is binding on intermediate appellate and superior courts.

■ Since the mother was not found to be unfit and the practical effect of the custody award was to place the children under the care and control of the grandparents, the award was erroneous and must be reversed.

We order this reversal, recognizing that its effect may be the disruption of a stable and beneficial environment. On the other hand, we have no way of knowing whether "the disruption of a satisfactory status quo . . . may lead to a more desirable relationship in the long run." (*Guardianship of Smith, supra,* 42 Cal.2d at p. 96, concurring opinion.) The evidence is stale and may have been superseded by new conditions. It is appropriate to order a general reversal, setting the custody issue at large and directing the trial court forthwith to take further proceedings not inconsistent with this opinion. So ordered.

Pierce, P. J., and Regan, J., concurred.