[Civ. No. 24064.   First Dist., Div. Two.   Feb. 26, 1968.]

KEITH M. O'BRIEN, Plaintiff, Cross-defendant and Appellant, v. LUCRETIA L. O'BRIEN, Defendant, Cross-complainant and Respondent.

Betty Aronow for Plaintiff, Cross-defendant and Appellant.

Norman & Pearson and John N. Norman for Defendant, Cross-complainant and Respondent.

SHOEMAKER, P. J.—This is an appeal by plaintiff Keith O'Brien from an order awarding custody of his minor child, Tanya, to her maternal grandparents pending further order of the court.

On June 27, 1966, plaintiff filed a complaint for divorce on the grounds of adultery and extreme cruelty. Plaintiff sought custody of the parties' minor child, Tanya, then four years of age, and alleged that defendant Lucretia O'Brien was not a fit and proper person to be given custody of said child.

Defendant answered, denying the material allegations of the complaint, and also cross-complained, seeking a divorce on the ground of extreme cruelty, and custody of Tanya.

Defendant and cross-complainant thereafter obtained an order directing plaintiff and cross-defendant to appear and show cause why, among other things, orders should not be made for Tanya's custody during the pendency of the action.

On July 28, 1966, after an extended hearing, the court found that neither parent was a fit and proper person to have custody of Tanya and that the child's maternal grandparents, Mr. and Mrs. William Morgan, were in all respects fit and proper persons, whose home was a fit and proper environment for the raising and training of the child and conducive to her best interests. Custody of Tanya was accordingly awarded to the Morgans pending further order of the court.

Plaintiff's primary contention on appeal is that the evidence was insufficient as a matter of law to support either the finding of his unfitness or of the Morgans' fitness to have custody of Tanya.

The facts bearing upon the custody issue may be summarized as follows: Plaintiff and defendant were married on September 3, 1960. Plaintiff, a dentist by profession, was a widower with a daughter, Sherrie, who was nine years of age at the time of his marriage to defendant. He was a member of the Mormon religion and did not smoke or drink. Prior to her marriage to plaintiff, defendant adopted the Mormon faith and stopped smoking and drinking.

Tanya was born on January 26, 1962.

The evidence bearing upon defendant's unfitness as a parent shows that commencing in March 1963, when Tanya was 14 months old, she began spending a great deal of time away from the home, leaving her daughter in the care of Sherrie or another babysitter. Defendant went bowling almost daily and also frequented various bars and had cocktail, dinner and luncheon dates with several male acquaintances whom she admitted kissing. During the period between May 31 and June 21, 1966, she committed four acts of adultery with two men.

The evidence pertaining to plaintiff's unfitness as a parent was generally to the effect that he was a reserved and unaffectionate man by nature, that his interests lay primarily in the business world and that he was somewhat indifferent to his duties as a husband and father. Thus, defendant testified that following the birth of Tanya, plaintiff never kissed her and had sexual relations with her infrequently. She described him as a man with no friends who had no interest in socializing. She further stated that he was not openly affectionate to Tanya and that he had never been active in her rearing, had never fixed her bottle, changed her diapers, taken her to the doctor, repaired her toys or taken her on any outings. On one occasion, when plaintiff was caring for Tanya during the evening, defendant returned home and found that he had left the child alone in her crib while he went on an errand. He was also indifferent to Tanya's dental needs and delayed three months before filling a cavity. On another occasion, when Tanya was two years old, plaintiff twisted defendant's arm in front of the child, causing Tanya to begin screaming and crying. Only four days before the trial commenced, plaintiff informed defendant that he would not allow Tanya to sleep in her mother's bed, and he told defendant, in Tanya's presence, that if she tried to sleep with the child, he would have her thrown in jail and would send Tanya to a children's shelter.

Plaintiff testified that he devoted approximately 9 to 10 hours a day to his dental practice. If he were awarded custody of Tanya, his first choice would be to have his 70-year-old mother move to California from Salt Lake City and care for the child while he was at work. Plaintiff stated that his mother had raised Sherrie, between the ages of three and nine, while he was in dental school and in the air force. As a second alternative, plaintiff stated that his sister Beverly, who was 28 years old and unmarried, would care for Tanya. Plaintiff

admitted that a substantial conflict had existed between Beverly and defendant for a period of several years and that Beverly disliked defendant.

Lyndell Moberly, a neighbor, described defendant as a friendly, outgoing person and plaintiff as a quiet, reserved individual who was sometimes too preoccupied to bother to speak to people.

William Morgan, defendant's father, described plaintiff as a man who did not make friends easily and who did not behave toward his daughters as a normal father would, in that he spent very little time with them and did not play with them or take them on outings. In Morgan's opinion, it would not be good for Tanya to be placed in her father's custody because he had neither the time nor the real inclination to care for her and was a "driving type" of individual whose primary interest lay in the business world rather than in the welfare of his home. He also felt that plaintiff's sister, Beverly, possessed few motherly traits, was primarily interested in her job and would probably tire of caring for Tanya within a few months. Morgan further stated that he would expect Beverly to go out of her way to turn Tanya against her mother.

Morgan stated that he and his wife would be willing to assume temporary custody of Tanya and was of the opinion that they could provide her with adequate love and care. Morgan stated that he was 56 years of age, was employed as a research scientist at Lockheed, and had a three-bedroom home.

Doreen Crane, a friend of the parties, described plaintiff as a man who was not openly affectionate to his wife or child. In view of plaintiff's nature, Tanya's extreme youth and the long hours which plaintiff worked, Mrs. Crane felt Tanya should be placed in her mother's custody.

Avis Kutsenda, a neighbor, and an employee of plaintiff, described plaintiff as a very good father who was loving and patient and who frequently took care of Tanya and took her various places. Mrs. Kutsenda stated that Tanya adored her father and loved to follow him about and climb on his lap.

Beverly O'Brien, plaintiff's sister, stated that she had taken care of Tanya in the past and that her relationship with the child was a good one. If plaintiff were awarded custody of Tanya, she would be willing to take care of the child.

■ Plaintiff relies upon the "parental preference" rule, namely, that the custody of a minor child must be awarded to a parent as against a stranger unless the parent is affirmatively found to be unfit. (*Guardianship of Smith* (1954) 42

422

Cal.2d 91, 92-93 [265 P.2d 888, 37 A.L.R.2d 867]; *Stewart* v. *Stewart* (1953) 41 Cal.2d 447, 452 [260 P.2d 44]; *Roche* v. *Roche* (1944) 25 Cal.2d 141, 144 [152 P.2d 999]; *Moffit* v. *Moffit* (1966) 242 Cal.App.2d 580, 582-583 [51 Cal.Rptr. 683].) Plaintiff asserts that in the instant case, the court's finding that he was not a fit parent is totally without evidentiary support. We agree.

Although fitness is a factual question, the burden on the one claiming parental unfitness is a heavy one. (*Guardianship of Smith* (1957) 147 Cal.App.2d 686, 694 [306 P.2d 86].) Thus, "a father is *prima facie* presumed to be competent to have the care and custody of his child, and can only be deprived of his right by an affirmative showing that he is incompetent. He is not shown to be incompetent by proof that he has some faults, or that he has not been or is not an ideal parent. There must be such a showing as to make it appear that he will probably fail in a substantial degree to discharge his duty toward his child." (*Matter of Galleher* (1905) 2 Cal.App. 364, 370 [84 P. 352].)

The California courts have avoided the formulation of a clear-cut definition of "unfitness" applicable to all guardianship or custody cases, and it has been stated that the variable and complex nature of human relationships and conduct renders it impossible and undesirable to do so. (*Guardianship of Smith* (1957) 147 Cal.App.2d 686, 694 [306 P.2d 86].) However, in *Guardianship of Willis* (1954) 123 Cal.App.2d 446, 450 [266 P.2d 944], the court quoted with apparent approval the following definition of "unfitness" from the Massachusetts case of *Richards* v. *Forrest* (1932) 278 Mass. 547 [180 N.E. 508, 510]: " 'In general, the word means unsuitable, incompetent, or not adapted for a particular use or service. As applied to the relation of rational parents to their child, the word usually although not necessarily imports something of moral delinquency. Violence of temper, indifference or vacillation of feeling toward the child, or inability or indisposition to control unparental traits of character or conduct, might constitute unfitness. So, also, incapacity to appreciate and perform the obligations resting upon parents might render them unfit, apart from other moral defects.' "

In the instant case, the evidence, even when viewed in the light most unfavorable to plaintiff, at most indicates that he is by nature a reserved individual with a limited ability or inclination for socializing with others or engaging in outward displays of affection; that he devoted most of his energies to business pursuits and the earning of a living for his family

and did not spend a great deal of time with Tanya; that on certain isolated occasions, he had been less than a model parent, in that he had left Tanya alone briefly, had not immediately tended to her dental needs and had twice engaged in heated arguments with defendant in the child's presence. The record is devoid of any evidence suggesting that plaintiff was in the least immoral or intemperate or that he was ever intentionally cruel to his child. The only evidence bearing upon Tanya's feelings toward her father was to the effect that she adored him.

Under such circumstances, the evidence pertaining to plaintiff's competence as a parent was at best sufficient to show that he had some faults and was not an ideal parent in all respects. Nothing in the evidence produced demonstrates that plaintiff would fail in any substantial degree to discharge his duty toward his child.

Defendant asserts that plaintiff's proposals for Tanya's care are in some respects undesirable, since his dental practice requires him to work a 9 or 10-hour day and Tanya would thus be cared for during the day either by plaintiff's 70-year-old mother or by his unmarried sister, who disliked defendant and might well attempt to turn the child against her. Although these factors are cetrainly among those which might be considered in determining which of two fit parents should be given custody of their child, that situation is not here presented, since defendant was affirmatively found to be an unfit parent and has chosen not to challenge said finding by appeal. The factors upon which defendant relies certainly would not justify the court in denying plaintiff, as the sole fit parent, custody of his child.

In the light of the foregoing, the order awarding custody of Tanya to her maternal grandparents must be reversed, and it therefore becomes unnecessary to discuss plaintiff's additional contentions relative to the Morgans' fitness to have custody of the child and to certain allegedly erroneous procedural rulings.

The order awarding custody of the minor child, Tanya, to her maternal grandparents pending further order of the court is reversed, and the trial court is directed to award custody of Tanya to her father, plaintiff herein.

Agee, J., and Taylor, J., concurred.