[S. F. No. 16977. In Bank. Nov. 1, 1944.]

MARGARET ROCHE, Appellant, v. JOSEPH E. ROCHE, Respondent.

Phillip Barnett and Robert L. Dreyfus for Appellant.

No appearance for Respondent.

CARTER, J.—Respondent and appellant are husband and wife, and after living together for eleven years, they separated on March 6, 1943. They have one child, a girl, age eight. On April 9, 1943, plaintiff commenced an action against defendant for divorce on the ground of extreme cruelty, alleging in her complaint that she "is a fit and proper person to have the custody and control" of said child. That allegation was admitted by defendant, but he alleged that the child had been living with his mother for several years, and to remove the child from her present abode would not be beneficial to the child. The trial court found plaintiff's allegations of extreme cruelty and of her fitness to be true, and that $1.00 per month was proper for her support. Nothing was awarded for the support of the child. The court found that:

"The best interests of the said minor child will be subserved by the following:

"That the joint control of said minor child be awarded to both parents, but it is hereby ordered that the physical care and control thereof, until the further order of this Court be awarded to the paternal grandparents, residing on a ranch near Turlock, California; and it is further ordered that plaintiff be granted the privilege of visiting said child whenever she desires."

Plaintiff contends that in view of the finding that she is a fit and proper person to have the custody and control of the child, the only conclusion possible is that she is entitled to have the "physical care and control" of the child, and that strangers may not be given such "physical care and control" even though the court found it was for the best interests of the child.

In the case of *Stever* v. *Stever*, 6 Cal.2d 166 [56 P.2d 1229], this court held that section 197 of the Civil Code should be construed with subdivision 1 of section 246 of said code, and they contemplate that the natural right of a parent to the care of a minor child, if a fit and proper person, shall prevail as against an entire stranger, the law presuming, in the absence of either evidence or findings showing the contrary, that either parent is a proper person to whom the minor's care should be awarded; and in a contest between the mother and father of a minor for custody, the court is not justified in awarding the custody to the parents of the father, although the latter consents, without a finding that the mother is an unfit person for the custody. In that case, no provision having been made for the custody of a minor child in either the interlocutory or final decree of divorce, a hearing was had on the mother's application for custody. No findings were made as to the fitness of either parent. The court awarded custody to the child's paternal grandparents with the father's consent. The mother appealed. In reversing the order of the trial court this court relied upon *Newby* v. *Newby*, 55 Cal.App. 114 [202 P. 891], in which no finding was made as to the fitness of either parent, but the trial court found that the best interests of the child required that custody be awarded to a stranger and made an order in accordance therewith. Such order was reversed on appeal upon the theory that if either of the parents is a fit and proper person to have the custody of a child, a stranger may not usurp that right. That principle was enunciated in the Stever case at page 170, where this court said:

"But before the court can deprive the mother of her right to the minor's custody and give her into the charge of strangers, there must be a finding that the mother is an unfit person to have the custody of her child." The court also compared the rules of custody in a divorce proceeding with those in guardianship proceedings, stating in approving *Guardianship of Mathews Estate*, 169 Cal. 26, at page 168 [145 P. 503]:

". . . a finding of the court that the mother was competent compels her appointment, notwithstanding her straitened financial condition, and the further fact that apparently the child's material welfare would best be served by giving it to another." To the same effect in principle as the Stever case are *Newby* v. *Newby, supra; Eddlemon* v. *Eddlemon,* 27 Cal.

App.2d 343 [80 P.2d 1009]; *In re White*, 54 Cal.App.2d 637 [129 P.2d 706]; *Guardianship of McCoy*, 46 Cal.App.2d 494 [116 P.2d 103; *Juri* v. *Juri*, 61 Cal.App.2d 815 [143 P.2d 708]; *Guardianship of De Ruff*, 38 Cal.App.2d 529 101 P.2d 521]. The high claim of preference to which parents are entitled with respect to the custody and control of their children has recently been declared by the Supreme Court of the United States in *Prince* v. *Massachusetts*, 321 U.S. 158 [64 S.Ct. 438, 442, 88 L.Ed. 645], where the court said:

"It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." The policy underlying this declaration is stated in *In re White, supra,* at page 640:

"The right of a parent to the care and custody of a child cannot be taken away merely because the court may believe that some third person can give the child better care and greater protection. One of the natural rights incident to parenthood, a right supported by law and sound public policy, is the right to the care and custody of a minor child, and this right can only be forfeited by a parent upon proof that the parent is unfit to have such care and custody."

It is of no significance that the court awarded the bare legal "control" of the child to both parents. The essential thing in which a parent is interested is the physical control and care of the child, which here was awarded to the paternal grandparents. The policy above declared may not be thwarted by the artifice of giving a fit parent bare legal control while denying actual physical care and custody.

That portion of the judgment awarding the physical care and control of the child to the paternal grandparents is reversed, and the trial court is directed to ascertain whether the father is a fit and proper person to have the custody and control of the child, and to make an appropriate order in the light of the circumstances disclosed.

Shenk, J., Curtis, J., Edmonds, J., and Traynor, J., concurred.

SCHAUER, J.—I dissent. The majority opinion cites cases which in turn rely upon *In re Campbell* (1900), 130 Cal. 380 [62 P. 613], the leading case upon the subject. The theory of

that case is manifest in the statement that the father's right to custody is (p. 382) ''like the right of the child in the father—a right vested in him for his own benefit, and of which it would be a personal injury to deprive him. The right must therefore be regarded as coming within the reason, if not within the strict letter, of the constitutional provisions for the protection of property. . . .'' In other words the child is regarded somewhat as a chattel and the property interest therein of the parent is made paramount to the best interests of the child. I do not believe we should uphold such principle even with the limitation, implicit in the majority opinion, that the child's interest will be considered if there is first a finding that the parent is ''unfit'' to have its custody.

Certainly a child should not lightly be taken from the custody of its parents and an order which did so would constitute an abuse of discretion unless supported by cogent evidence. I agree with the statement quoted from *Prince* v. *Massachusetts* (1944), 321 U.S. 158 [64 S.Ct. 438, 442 [88 L.Ed. 645] (although such case does not deal with an award of custody of children in a divorce action) that ''It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'' I subscribe also to the declaration quoted from *In re White* (1942), 54 Cal.App.2d 637, 640 [129 P.2d 706], that ''The right of a parent to the care and custody of a child cannot be taken away merely because the court may believe that some third person can give the child better care and greater protection. One of the natural rights incident to parenthood, a right supported by law and sound public policy, is the right to the care and custody of a minor child.'' But I do not concur in the fiat which is added to the above declaration that ''this right can only be *forfeited* by a parent upon proof that the parent is unfit to have such care and custody.'' (Italics added.)

The proceeding does not appeal to me as being one which involves a *forfeiture*. Surely the child must be regarded as having some rights. If the child does have rights which are material for consideration in its custody proceeding then those rights should be weighed and balanced as against or in favor of those who are asserting their own rights to its custody.

It seems to me also that the relative weight of custodial

claims must necessarily be affected by the very fact of pendency of divorce litigation. With the disruption of the home by divorce the need of the children of that home for protection of their interests by the state may well become greater and the personal rights of the parents to the custody of the children should, and ordinarily, to some extent at least, must, yield to the welfare of the children. That this philosophy has been adopted by the Legislature is, I think, evidenced by the statutes hereinafter quoted.

The Campbell case dealt with a guardianship proceeding. Section 138 of the Civil Code deals specifically with divorce proceedings. It purports to vest very broad powers in the trial court in relation to the award of custody of children in divorce actions. It provides that ''In actions for divorce the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same. In awarding the custody the court is to be guided by the following considerations: (1) By what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare; and if the child is of a sufficient age to form an intelligent preference, the court may consider that preference in determining the question; (2) *As between parents* adversely claiming the custody, neither parent is entitled to it as of right. . . .'' (Italics added.) The fact that subdivision 2 is specific in its limitation of applicability to *parents* suggests quite clearly that subdivision 1 contemplates the possibility of an award of custody to a person other than a parent when the best interests of the child require such drastic action. The language above quoted in declaring that ''In actions for divorce the court may . . . make such order for the custody, care, education, maintenance and support of . . . minor children *as may seem necessary or proper*'' (italics added) and that ''In awarding the custody the court is to be guided by . . . what appears to be for the best interest of the child'' certainly does not evidence an intention that the interests of the child shall be subservient to those of the divorcing parents except upon a finding that the parents have ''forfeited'' their rights.

It is to be noted also that the quoted statute wisely provides

that the court "may at any time [during minority of the children] modify or vacate" its order. A trial judge sees a substantial number of cases in which during the heat of the early stages of a divorce battle the welfare of the children—their very safety—obviously demands for them a *temporary* domicile apart from that of either of the warring parents. Yet in looking into the calmer days to be expected of the future, with consideration for the best interests of both children *and* parents, it may seem definitely undesirable to stigmatize the parents as "unfit" because of a mere transitory condition. The most salutary power which the court could exercise over the parents sometimes would be the power to place first the best interests of their children. The exigencies of work, of necessary travel, of health, of military service, can all create conditions which may require temporary custodial care of children in a domicile other than that of a parent, although the parents may be of good character. It seems to me to be regrettable and wholly unnecessary to lay down a rule which will absolutely require trial judges, under such circumstances, to find that a parent is "unfit" before an order protecting the interests of children by awarding their "physical care and control" to another can be sustained.

Section 213 of the Civil Code gives further evidence of the purpose of the Legislature to make the best interests of the child superior to the claims of the parent by providing that "A parent entitled to the custody of a child has a right to change his residence, *subject to the power of the proper court to restrain a removal which would prejudice the rights or welfare of the child."* (Italics added.) This section, like section 138, above quoted and discussed, does not by its terms make a finding of unfitness of the parent a condition precedent to its operation.

Still further evidence of the regard of the Legislature for the welfare of children and of the view that such welfare of the children shall be paramount over mere selfish claims of parents is found in the Probate Code sections dealing with guardianship. Section 1406 directs that "In appointing a general guardian of a minor, the court is to be guided by what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare . . ." and section 1407 gives a preferential right to a parent for appointment as guardian *only among persons "equally entitled in other respects to the guardianship of a minor."* The ques-

tion of the power of the court in a guardianship proceeding, however, is not before us. Regardless of the weight to be given the Campbell case decision in guardianship proceedings, neither it nor the cases which have followed its lead need control us in the case now before us.

Normally the best interests of a child will require that it be in the custody of a parent who is not wholly unfit as opposed to a person who is not its parent, however closely otherwise related, but I am not willing to lay down an absolute rule of law which prejudges every such case. I have confidence in the wisdom of trial judges and in the processes of the law which enable them to view and hear at first hand the children, the parents and other claimants, and believe that their discretion in the premises should not be so adamantly limited as is done by the rule here laid down.

This appeal is upon the judgment roll alone. We do not know what evidence was before the trial court but we are bound to presume that it was ample to support the finding or conclusion that "The best interests of the said minor child will be subserved by" the terms of the order which was made. It is to be remembered that such order does not completely divest the parents of custody or control. The father is in the military service; we do not know in what work the mother is engaged. The order provides "That the joint control of said minor child [aged 8 years] be awarded to both parents, but . . . that the physical care and control thereof, until the further order of this Court be awarded to the paternal grandparents, residing on a ranch near Turlock, California; and it is further ordered that plaintiff be granted the privilege of visiting said child whenever she desires." The majority opinion says that "The policy above declared [that a child can in no event be placed in the custody of one other than a parent except upon a finding that the parents are unfit] may not be thwarted by the *artifice* of giving a fit parent bare legal control while denying actual physical care and custody." (Italics added.) I cannot subscribe to this pronouncement, which, without cognizance of the evidence before the trial court, denounces as an "artifice" an order which, under well-established rules, we should presume to be based on substantial evidence. What order the trial court could make for the "physical care and control" of this child, whose father is absent in the military service, if upon a further

hearing it determined that the mother was "unfit," does not appear.

It seems to me that the trial court's order is authorized by the provisions of sections 138 and 213 of the Civil Code. I am satisfied that the opinion of the District Court of Appeal (First Appellate District, Division Two) prepared by Mr. Presiding Justice Nourse, reported in 147 P.2d 687, correctly states and applies the law in this case. Reference is made to such opinion for its further discussion of the questions presented.

The judgment should be affirmed.

Gibson, C. J., concurred.