[Civ. No. 7159.   Third Dist.   Dec. 7, 1945.]

ROBERT PHILLIPS ROBERTSON, Respondent, v. GRACE ELMIRA ROBERTSON, Appellant.

F. M. Brack for Appellant.

T. B. Scott for Respondent.

PEEK, J.—Under an interlocutory decree entered in June, 1943, appellant was awarded the custody and care of the three-year-old son of the parties, provided, however, that the father, respondent herein, should have the custody during the months of April, July and November of each year, until further order of the court. In September, 1943, respondent was inducted into the navy, and, on the date of the modification order herein attacked, was still in the service. In June, 1944, the final decree of divorce was entered. Appellant has since remarried, retaining the care and custody of said child. From the date of the original decree until respondent's induction into the navy he had been living continuously with his parents. After said induction appellant refused his request that she give the custody of the child to the paternal grandparents during the times the court had directed that he should have the child. However, she did leave the child with them on many occasions, usually for short, irregular periods of a day or two. On one occasion the boy was with them for more than two weeks. In August, 1944, respondent filed a motion for an order authorizing him to place the immediate care of the child with his parents during the months of April, July and November. At the conclusion of the hearing on said motion the court found that each of the parties was a competent and fit person to have the custody and control of the child; that the only home of respondent was with his parents, and that said grandparents were fit and proper persons to have the immediate care of the child. The court thereupon modified the decree to provide that during the months when respondent had the right to the care, custody, control and possession of said child, he should have the right to place the child under the immediate care of his parents at their home.

In considering the propriety of this order, we are not unmindful of the principle strongly relied upon by respondent that in cases of this character a large measure of discretion resides in the trial court. We have consistently recognized this precept, deferring to it so far as to affirm an order of the trial court although, had we been arbiters of the facts, we probably would have arrived at a different conclusion. (*Juri* v. *Juri,* 61 Cal.App.2d 815, 820 [143 P.2d 708].)

However, the discretionary power of a trial court necessarily is limited by those provisions of the codes wherein the express policy of the Legislature regarding general questions of custody are set forth (Civ. Code, §§ 138, 197; Prob. Code, §§ 1407-1408), and by the judicial interpretations of those code provisions in relation to the specific questions presented by the instant case. (See *Stever* v. *Stever*, 6 Cal.2d 166 [56 P.2d 1229]; *Newby* v. *Newby*, 55 Cal.App. 114 [202 P. 891].)

The first of these questions is the right of a parent to the care and custody of a child as compared with what, under the circumstances of this case, would necessarily have to be termed the right of a stranger to the custody, if the order of the trial court goes to the extent of its stated purpose: that the respondent "shall have the right to place said child under the immediate care" of his grandparents during the period when respondent was given the sole custody.

▮ The law in this state is well established that "a court does not have jurisdiction to award the custody of a minor child to a stranger" as against a parent who is found to be a fit and proper person to have its custody and who is in a position to take care of the child. (*Heinz* v. *Heinz*, 68 Cal.App.2d 713 [157 P.2d 660].) See, also, *Stever* v. *Stever*, 6 Cal.2d 166 [56 P.2d 1229]; *In re White*, 54 Cal.App.2d 637, 640 [129 P.2d 706]; *Guardianship of De Ruff*, 38 Cal.App.2d 529, 530 [101 P.2d 521]; *Eddlemon* v. *Eddlemon*, 27 Cal.App.2d 343, 344 [80 P.2d 1009]; *Newby* v. *Newby*, 55 Cal.App. 114, 116 [202 P. 891].

We do not construe said rule to mean that the only cases where the custody of a child may be lodged with a third person are those wherein it has been shown that the parent is unfit to discharge the trust. But we do not believe that the facts in the instant case are such as would call for the action which apparently was warranted in *Booth* v. *Booth*, 69 Cal.App.2d 496, 501 [159 P.2d 93] (hearing in the Supreme Court denied), as contended by respondent.

The case last cited, which the reviewing court characterized as "unusual," involved an attempt by a mother to secure the custody of her twelve-year-old daughter, approximately ten years after the divorce. The court observed that "almost from her birth when the plaintiff [mother] tossed the baby into the care of its paternal grandmother and refused to give her any further care or attention," the child had lived with her father in the grandparents' home, and that during the ten years since

the divorce plaintiff had not contacted the child more than three or four times and had become "really a stranger to her." Moreover, at no time during the proceedings was there a finding that the plaintiff was a fit and proper person to have the care and custody of the child, but on the contrary she had been denied the custody by the terms of the interlocutory decree. At the time of the filing of the motion for a modification of the decree the father of the child was away on military duty and had no opportunity to be present at the hearing. For obvious reasons, therefore, the plaintiff's motion was denied.

But this does not mean that custody can be awarded to a stranger merely because a court may feel that by so doing the child may have greater material advantages (See *Estate of Mathews,* 169 Cal. 26 [145 P. 503]), or that "some third person can give the child better care and greater protection." (*Roche* v. *Roche,* 25 Cal.2d 141, 144 [152 P.2d 999].) See, also, *In re White,* 54 Cal.App.2d 637, 640 [129 P.2d 706].

What then was the effect of the modification order herein? Did it, as appellant contends, actually lodge the custody with strangers (the paternal grandparents), or did it, as respondent argues, continue the custody with him as before, merely confirming a right which he claims he already had to place the child under the immediate care of the grandparents?

In support of his contention respondent cites the cases of *Luck* v. *Luck,* 92 Cal. 653 [28 P. 787] and *Heinz* v. *Heinz,* 68 Cal.App.2d 713 [157 P.2d 660]. We do not question the general rule therein stated concerning the right of the parent to whom custody of the child has been awarded to select a residence of his own choosing. But we do question the applicability of the rule to the facts presented in the instant case.

As stated in the Luck case at page 655, if the father "is entitled to the custody of the children at all, he has the right to name any reasonable place in which they shall *abide with him.*" (Italics added.)

Nor does applicant question the right of respondent to have the child reside with him. In fact what appears to have been an attempt by appellant to obviate the questions now raised was made by her at the outset of the hearing when she offered to stipulate with respondent that the "interlocutory decree be amended so as to allow him to have the child while he was on his furloughs and leaves while he is in the Navy, no matter what the time is," but respondent refused the offer. However, she does strenuously attack that portion of the modi-

fication order which gives to the grandparents the custody of the child during the custodial periods allotted to respondent. In other words, it is appellant's contention that the residence of the grandparents is not a home where the child would "abide with him" as in the Luck case, inasmuch as respondent was far removed therefrom, which condition would undoubtedly prevail for an indefinite period of time. For example, when the cause was heard respondent was stationed in the State of Rhode Island.

While it is true, of course, that one charged with the care of a minor may delegate to others many of the incidental duties appertaining thereto, yet, where a legally appointed custodian is unable to exercise the supervisory powers and perform the discretionary duties which are the distinguishing functions of a trustee, then to permit another to exercise such powers or perform such duties would constitute not delegation but substitution.

In the previously cited case of *Roche* v. *Roche,* 25 Cal.2d 141 [152 P.2d 999], the court had before it almost the precise question here at issue and, in reversing an order of the trial court giving joint custody to the parents but lodging the actual physical custody in the paternal grandparents, stated:

"It is of no significance that the court awarded the bare legal 'control' of the child to both parents. The essential thing in which a parent is interested is the physical control and care of the child, which here was awarded to the paternal grandparents."

Finally, the question arises whether by the modification order appellant has been improperly deprived of the custody and care of her child, or whether the order operates only as between respondent and his parents without affecting appellant's rights during the three months in question. In other words, is a right of appellant "taken away" by this order within the meaning of the rule of the Roche and White cases based on the code sections heretofore cited? We conclude that it is.

It cannot be denied successfully that the prolonged absence of a father who has been awarded the custody and care of his child, even though such absence be the result of military duty, constitutes such a change of conditions as to warrant a modification of the decree which awarded such custody and care. (*Peterson* v. *Peterson,* 64 Cal.App.2d 631 [149 P.2d 206].) Indeed, it must be conceded that this was recognized by respondent when he petitioned for a modification of the

decree herein. In respondent's absence, the child must be cared for by some one—either the mother or strangers to the marriage. The correct solution of this problem was foreshadowed in the Peterson case (64 Cal.App.2d 631) wherein this court, at page 635, stated:

"However, if such contingency should arise [the induction of the father into the armed forces] it is obvious that the defendant [father] would be compelled to place the child with others. Under such circumstances the natural right of the mother to the care of a minor child, if a fit and proper person, would prevail as against strangers." See, also, *Juri* v. *Juri*, 69 Cal.App.2d 773, 778, 779 [160 P.2d 73].

We conclude that the mother of this three-year-old child, being found not only to be a competent and fit person to have the custody and control of the child, but also, during the greater part of the year, to be the person best fitted above all others, including the father, to have such custody and control, is entitled to an order awarding the care, custody and control of the child, Philip, to her until such time as the father returns permanently to his home in California, when, if circumstances demand, a new order may be made.

It is quite evident from the record that the trial court, in granting respondent's petition, was strongly influenced by a desire to gratify the wishes of loving grandparents as well as a desire to further what the father felt to be his convenience while in the armed forces. But these considerations have no place, at least not a controlling place, in an inquiry of this nature. The chief concern of the courts is the welfare of the child, which is the paramount consideration by which they are to be guided in awarding the custody of the child. (Civ. Code, § 138.) In the case of a child of tender years, experience has taught that in the vast majority of cases there is no one who will give such complete and selfless devotion, and so unhesitatingly and unstintingly make the sacrifices which the welfare of the child demands, as the child's own mother. The record herein abounds in evidence showing the anxious desires of a mother to care for her child. Under such circumstances fairness alone requires that she and not a third person be allowed the opportunity to carry out the trust she as a mother owes her child. (*Juri* v. *Juri*, 69 Cal.App.2d 773, 778, 779 [160 P.2d 73]; *Estate of Lindner*, 13 Cal.App. 208, 212 [109 P. 101].)

However, respondent contends that inasmuch as the trial court found that it was for the best interest and welfare of the child that the custody be awarded as provided in the

order modifying the decree, the condition imposed by section 138 has been fulfilled and the finding is binding on appeal. While it is ordinarily true that the finding or determination of a trial court predicated upon sufficient evidence will not be disturbed on appeal, yet where there is no evidence to sustain the finding and the determination is based on an erroneous view of the law (*Coakley* v. *Ajuria,* 209 Cal. 745, 749 [290 P. 33]), the rule has no application. Such is the situation in this case.

■ As has been seen, it is not merely a matter of balancing conveniences when the right of custody of a child as between a parent and a third person is questioned. Before a court may award the custody of a child of tender years to a stranger to the marriage, where the mother is capable and desirous of caring for the child and is in a position to do so (*Heinz* v. *Heinz,* 68 Cal.App.2d 713, 714 [157 P.2d 660]), it clearly must be made to appear that the welfare of the child would be impaired by permitting her so to do. (See *Gavel* v. *Gavel,* 125 Cal.App. 589, 591 [11 P.2d 654].)

■ There is nothing whatever in the evidence nor is anything disclosed by the record before this court to show that the interest or welfare of this child would be prejudiced by leaving the custody with the mother. Appellant was questioned minutely and at great length and frequently by the trial court as interrogator, with respect to her care of the child, although there was no question but that she was a fit and proper person to be entrusted with that care. The apparent reason for such interrogation was that for some six weeks during the summer months, while she was assisting her husband in the work and management of his drug store, appellant had her child attend a day nursery school which is part of the public school system of the city of Modesto. About four days a week appellant would, after giving the child his breakfast, take him to the school at about ten-thirty or eleven o'clock in the morning, and bring him home in the afternoon. There were approximately thirty other children at the school in charge of trained teachers and attendants. Her thoughtful regard for the child's welfare is well illustrated by her statement that in her opinion the association of the child with other children of his own age was beneficial to him and met the need for social adjustment, and that even if she were not required to be away from home for a few hours during the day she still would be disposed to have the boy attend the school for a part of the time.

She further testified that she was constantly watchful as to

his diet, conduct and treatment at the school, and that, whenever it was necessary, she would take care of him herself. It thus appears that appellant never in fact relinquished her power and duty of supervision over her son nor permitted another to exercise the discretion which a duly appointed custodian alone may exercise. (See *Guardianship of Reynolds,* 60 Cal.App.2d 669, 678, 680 [141 P.2d 498].) Yet it is apparently on this matter of the child's attending said school that the trial court based its finding, conclusion and decision. Thus, near the end of this phase of the examination, the court stated:

"I have a feeling right now that no child could fare better than in the arms of his own, so therefore I can't see that he is better off at the nursery than with his grandparents."

It is not a question of the child's being better off at school than with his grandparents. Their right, if it can be called that, is no different from that of any third person or stranger. (*Heinz* v. *Heinz,* 68 Cal.App.2d 713 [157 P.2d 660].) Aside from involving a disregard of the fact that attendance at the nursery was for a limited number of hours each day while custody with the grandparents would be unlimited during the time allotted, the issue thus raised by the court injected into the case an entirely false quantity.

There is no showing that attendance at the nursery was in any way harmful to the child. (See *Gavel* v. *Gavel,* 123 Cal.App. 589, 591 [11 P.2d 654].) In fact the trial court stated: "There is no showing here that that place isn't a good place," at the same time expressing the opinion that, in view of the age of the child, "it was a matter for philosophy." Nevertheless, it is apparent that those entrusted by the state with the administration of such matters deemed the child of sufficient age to attend the nursery. In this regard it further should be noted that there is no direct or indirect contradiction of appellant's statement: "No child in town looks as well cared for as mine."

We cannot subscribe to a principle which would justify a court in depriving a mother of the custody of her child because she entertained an opposing philosophy or concept respecting the educational requirements of the child so long as such concept finds support in legal and social sanction.

The order is reversed with directions to modify the decree in accordance with the principles set forth in this opinion.

Adams, P. J., and Thompson, J., concurred.