[Civ. No. 14634. First Dist., Div. Two. May 10, 1951.]

GERALDINE A. HAMILTON, Appellant, v. JOHN H. HAMILTON, Respondent.

Vincent M. Hallinan and Richard M. Siegel for Appellant.

Young, Rabinowitz & Chouteau for Respondent.

SCHOTTKY, J. pro tem.—This is an appeal from an order modifying an interlocutory decree of divorce by changing the custody of a minor daughter, Michelle, 9 years old, from the mother to the father.

Appellant mother was awarded an interlocutory from respondent father in 1943, which decree approved and made a part of the decree the property settlement previously reached between the parties. The court made no finding as to the fitness of either parent to have the custody of the child, then 2½ years old, and did not, in the decree proper, make an award of the custody of the child. The property settlement agreement, however, gave appellant mother legal and physical custody of the child and required respondent father to pay $75 for the support of the child and also required him to pay $200 per month to appellant for 48 months or until her remarriage. In 1946 on motion of appellant the amount to be paid by respondent for the support of the child was raised to $100 per month.

In September, 1949, respondent father filed an affidavit alleging that in December, 1948, appellant mother had delivered said minor child to Dr. Margaret Chung, that appellant was

not a fit and proper person to have custody of said child, that she threatened to take said child out of the State of California and praying that the custody of the child be awarded to him. An order to show cause was issued and pending the hearing thereof appellant was restrained from taking the child outside of the State of California and both parties were restrained from taking the child from the physical possession of Dr. Chung. Following a hearing which occupied a portion of October 26th, October 27th and November 28th, the court on January 7, 1950, made the order appealed from, awarding the custody of said minor child to respondent, in which order the court found "that defendant (respondent) is a fit and proper person to have the custody of said child, Michelle Hamilton, and that plaintiff (appellant) is neither a fit or proper person at the present time to have the custody of said child and further that the said plaintiff is unable to make any adequate provision therefor; that it is to the best interest and well-being of said child that custody of said child be awarded to the defendant."

Appellant bases her appeal upon two contentions: 1. The finding of fact that she is an unfit mother is unsupported by the evidence. 2. The order depriving her of custody of her minor child is an abuse of discretion on the part of the trial court.

Before discussing these contentions of appellant we shall summarize briefly the evidence as disclosed by the record, bearing in mind the familiar rule governing appellate tribunals that all of the evidence favorable to the respondent must ordinarily be accepted as true, and that all conflicts must be resolved in favor of the respondent. As hereinbefore stated the minor child was in the custody of appellant after the entry of the interlocutory decree in 1943. During most of the time the child was boarded out. In the early part of 1948 the child was brought to San Francisco to live with appellant in a small apartment on Post Street. In December, 1948, appellant told Dr. Margaret Chung, a well-known American-born physician and surgeon, that an investigator for the juvenile authorities had told her that she would either have to find a home for the child or the child would become a ward of the juvenile court. Dr. Chung, who was the godmother of Michelle, and was the surgeon who had delivered her at birth, and who had seen her frequently from the time of her birth, told appellant she would be happy to take care of the child without any cost to appellant and for appellant to let the

child come and stay with her. Appellant agreed to this and on December 25, 1948, Dr. Chung went to appellant's apartment and got Michelle. The evidence showed that Michelle had had a pancreatic deficiency from birth which required constant medical care, medication and a special diet. When Dr. Chung received the child from appellant in December 1948, Michelle, then about 8 years old, weighed 32 pounds and was in the first grade. She was pallid, nervous and irritable. While living with Dr. Chung, Michelle was given a special diet and tutored in her school work so that at the time of the hearing, some 10 months after coming to live with the doctor, she weighed 50 pounds and was in the fourth grade. In September, 1949, appellant planned to remove the child from California and take her to Florida and so informed Michelle and immediately the child began to lose weight and cry frequently.

Appellant testified that she was living in one room in a rooming house and eating her meals outside; that she was not employed at the time that she testified (November 28th) but that she had worked a week or a week and a half as a cigar and cigarette clerk some six weeks previously. She testified to no other employment. She stated that she planned to take Michelle to Florida and to live with her father there; that her father was a widower who was an officer in the Miami Police Department; that he lived alone in a two-room apartment but would get a bigger place as soon as she and Michelle arrived there; that she expected to obtain employment when she got to Miami. Respondent testified that appellant's father was an elderly man, in poor health and had a heart condition.

Respondent is an airplane pilot who is in California about one-half of the time. He is a bachelor earning about $1,000 per month and testified that if he were awarded the custody of Michelle he intended to have her continue to live with Dr. Chung. Additional facts will be hereinafter set forth.

Notwithstanding the earnest and able argument of counsel for appellant we are convinced that the findings of the court find ample support in the record and that the court did not abuse its discretion in making its order changing the custody of the child from the mother to the father.

The authority of the court to change or modify its decree in divorce cases, so far as the custody and maintenance of the minor children are concerned, is found in section 138 of the Civil Code, wherein it is provided: "In actions for divorce the court may, during the pendency of the action, or at

the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same.''

Appellant concedes, as indeed she must, that the trial court has a very broad discretion in determining the custody and control of minor children in a divorce action, and to modify such order upon a proper showing, and that a clear abuse of discretion must appear before this court can interfere with the determination of the trial court.

As was said in *Prouty* v. *Prouty*, 16 Cal.2d 190 at page 194 [105 P.2d 295] : ''The question as to whether a parent is a fit or proper person to have the custody of a minor child refers, however, to his or her fitness at the time of the hearing.''

In determining the fitness of a parent to have the custody of a child a court should consider the question of fitness as it relates to the welfare of the child. The court in the instant case found that respondent father was a fit and proper person to have the custody of the child, and that appellant mother was neither a fit or proper person *at the present time* (italics ours) to have the custody of said child, and the court found further that appellant was unable to make any adequate provision therefor and that it is to the best interest and well-being of said child that her custody be awarded to respondent.

It is clear from the record that there was a change in the circumstances of appellant, respondent and the child since the entry of the interlocutory decree in 1943. Appellant had found it necessary to board the child during most of the time, and after she brought the child to San Francisco early in 1948 to live with her in her apartment on Post Street, it is fairly inferable from the record that she was not able to care for the child properly for the record shows that she called Dr. Chung and told Dr. Chung that the juvenile authorities had informed her she would have to find a home for the child. She was quite willing to give the child over to Dr. Chung's care in December, 1948, and the record shows that in the 10 months between the time appellant turned the child over to Dr. Chung's care and the time of the hearing, the child gained 12 pounds in weight and advanced from the 1st grade in school to the 4th. After appellant in September, 1948 decided that she wanted to take the child from Dr.

Chung's care and take her to Florida the matter was brought before the court upon the application of respondent for a change of custody. It is apparent from the record that the court felt that appellant was not in a condition or a position to properly care for a child in Michelle's physical condition, for when appellant was on the stand the court said: "I can take a look at this young lady and from my observation right now tell she is not in any physical condition to take care of this baby." The court was fully justified in concluding that the child needed the type of care that she was receiving from Dr. Chung and that if the custody of the child were awarded to respondent she would continue to receive that care and treatment, whereas if appellant continued to have custody of the child she would carry out her announced intention to take the child to Florida to live with appellant and her father, a widower, with the probable result that the health and welfare of the child would suffer detriment.

Appellant relies strongly upon the case of *Roche* v. *Roche,* 25 Cal.2d 141 [152 P.2d 999], in which divorced parents were given joint "legal" custody of their child, physical custody of whom was given to the child's grandparents by the trial court. There was a finding that the mother was a fit and proper person to have custody of the child but no finding as to the fitness of the father. The order was reversed on appeal and the trial court directed to make a finding as to the father's fitness, and to make an appropriate order in the light of the circumstances disclosed, the Supreme Court following the rule laid down in *Stever* v. *Stever,* 6 Cal.2d 166 [56 P.2d 1229], that if either parent is a fit and proper person to have the custody of a child, such custody may not be awarded to a stranger. The court went on to state that this "policy may not be thwarted by the artifice of giving a fit parent legal custody while denying actual physical care and custody."

As we view the matter the order in the instant case is easily distinguishable from the order in *Roche* v. *Roche.* Here the custody of the child, both legal and physical was awarded to respondent, her father. The mere fact that it was respondent's announced intention to permit the child to remain for the present in Dr. Chung's care, where appellant herself placed her in December 1948, and where her condition showed such great improvement, does not make the instant case one in which physical custody is awarded to a stranger.

Nor do we agree with appellant that the order violates the policy of the law in favor of maternal custody for a minor female child of tender years. Appellant cites subdivision 2 of

section 138 which provides that "other things being equal," if a child is of tender years, it should be given to the mother.

█ The following language from *Phillips* v. *Phillips*, 48 Cal.App.2d 404, at page 407 [119 P.2d 736], is applicable here: "This section does not give the mother the *absolute right* to the custody of a child of tender years. The qualifying clause, 'but other things being equal,' still leaves a large measure of discretion with the trial court. If the court finds that other things are *not* equal, as it evidently did here, and there is any substantial evidence to support such a finding, our inquiry is at an end."

And as stated in *Munson* v. *Munson*, 27 Cal.2d 659, at page 666 [166 P.2d 268]: "Plaintiff relies on the proposition that, as between parents adversely claiming custody, 'other things being equal, if the child is of tender years, it should be given to the mother.' (Civ. Code, § 138, which refers to actions for divorce; the proposition is equally applicable here.) The evidence above recited is clearly sufficient to support the determination of the trial court that 'other things' are not equal in this case. 'In determining whether other things are equal within the meaning of the above code section, the trial court is necessarily allowed a wide latitude in the exercise of its discretion. In the first instance it is for the trial court to determine, after considering all the evidence, how the best interests of the child will be subserved. The question is to be determined solely from the standpoint of the child, and the feelings and desires of the contesting parties are not to be considered, except in so far as they affect the best interests of the child.' (*Taber* v. *Taber* (1930), 209 Cal. 755, 756 [290 P. 36].) It is settled that 'An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion. (Citations.)' (*Foster* v. *Foster* (1937), 8 Cal.2d 719, 730 [68 P.2d 719].)"

No other points raised require discussion. We are convinced that the order appealed from awarding the custody of the minor child, Michelle, to respondent is fully supported by the evidence and the law, and that for an appellate court to hold in this case that the trial court abused its discretion would be an unwarranted usurpation of the function of the trial court.

The order is affirmed.

Nourse, P. J., and Dooling, J., concurred.