[L. A. No. 22581.   In Bank.   Aug. 25, 1953.]

MARGARET   G.   STEWART,   Appellant,   v.   HENRY   A.
STEWART II, Respondent.

448

Will H. Winston for Appellant.

Leonard Di Miceli for Respondent.

SHENK, J.—This is an appeal by the mother of an 11-year-old boy and a 9-year-old girl from an order denying her application for modification of previous orders under which

custody of the children was given to their paternal aunt and her husband, Mr. and Mrs. Arch Havens. The children's father has not sought custody in his own behalf but he opposes any change of custody from his sister's family to his former wife.

On February 3, 1949, an interlocutory decree of divorce was granted to Mr. Stewart on his cross-complaint. The plaintiff presented no evidence in support of her complaint nor in opposition to the cross-complaint. The decree approved a property settlement agreement which contained a provision that the custody of the children, then 8 and 6 years of age, be placed with Mr. and Mrs. Havens. The agreement and the decree provided that neither parent should visit the children or seek their society of either child for three months after the entry of the interlocutory decree; that thereafter either parent could visit the children at the convenience of the Havens; and that "during the first year the children are with the Havens neither parent, except in the event of an emergency such as the death of the Havens, shall request the court for an order changing the custody of the children or either of them." The decree stated that it was understood that the "Havens are not required by either agreement or court order to maintain the custody of the children for any particular period of time." Mr. Stewart was ordered to contribute $100 per month to the Havens for the support of the children. The decree provided that pursuant to a stipulation of the parties no order would be made "at this time with reference to the fitness of either of the parties involving the care, custody and control of the minor children . . . but that at any time in the future, should the question of custody of the minors arise, evidence can be introduced by any interested party at that time as to any act or things, past or future, which might bear upon the question of the fitness of the party desiring such custody." Jurisdiction to enquire into the question of the fitness of the parties both past, present and future, at any future time, was expressly reserved by the court. A final decree of divorce was entered February 3, 1950.

In June, 1950, Mrs. Stewart married Mr. Herleman, her present husband. In November of that year she obtained a modification of the custodial order giving her the right to visit the children every other Sunday from 1 p. m. to 7 p. m. and to take them from the Havens' home during those hours.

The record indicates that she has exercised her visitation rights.

On January 21, 1952, the mother filed an application for a further modification of the custodial orders and for complete custody of the children. Her petition alleged that since those orders were made the conditions and circumstances surrounding the parties and upon which the former orders were based had materially changed. She stated that she was happily married to Mr. Herleman; that they were both regularly employed; that they had purchased a house for the purpose of providing a home for the children; that she and her husband were fit and proper persons to have the care, custody and control of the children; that the children were of an age where they required the loving and tender care of a mother in a home of their own; and that she desired to have them with her to give them this care. The petitioner also alleged that difficulty had been experienced with the Havens over her visitation rights, and that this was not conducive to the best interests of the children.

An affidavit in opposition was filed by Mr. and Mrs. Havens in which they denied that petitioner and her husband were fit and proper persons to have the care, custody and control of the children; denied that any difficulty had arisen over visitations except for just or reasonable cause; denied that the petitioner could and would give the children a mother's loving and tender care; and alleged that a change of custody would not be for the best interest of the children but would result in serious emotional disturbance. The children's father, Mr. Stewart, did not file an affidavit in opposition. However he testified at the hearing and stated that he objected to any change in the custody provisions. The court heard the testimony of Mr. and Mrs. Herleman, Mr. and Mrs. Havens, and Mr. Stewart, and interviewed the children in chambers in the presence of counsel for both sides. The matter was submitted on the affidavits and the testimony. At the hearing the parties had stipulated that the probation officer should make a supplemental report regarding the present suitability of the Havens' home and a continuation of the former investigation of the Herlemans with reference to their suitability to have custody of the children. A report was submitted but no recommendation as to custody was made. The report indicated that either home would provide proper care and supervision. It stated that the children were well adjusted and happy where they were, both at home and at school and

in church activities, and that they had expressed a preference to reside with the Havens. It also stated that the stepfather and mother appeared to have conducted themselves in a proper manner and had expressed a sincere desire to make a home for the children.

No findings were made or ordered by the court in denying a modification. On her appeal Mrs. Herleman contends that as the mother she is entitled to the care, custody and control of her children; that in the absence of a finding by the court that she is unfit the court erred in placing the children in the custody of strangers; and that she had made a sufficient showing of change of circumstances since the prior orders were made to support her petition for custody. █ Under the statutes and decisions of this state it is well settled that either parent is recognized as being naturally and presumptively a fit person to have the care, custody and control of the children of the marriage. (*Stever* v. *Stever,* 6 Cal.2d 166, 170 [56 P.2d 1229].)

The Havens argue that the original custody was placed in them by the agreement of the parties and that upon any application for change of custody fitness of the moving party would have to be proved. They contend that the burden of proving fitness is placed on the parent seeking custody. █ However the agreement should not operate to rebut the presumption of fitness to which the mother is entitled nor as a waiver of her right to a finding on that subject when as here her application for custody is denied and strangers are given preference. Cases cited by the respondents in support of their contention that findings are not necessary to support a modification of a custodial order (*Exley* v. *Exley,* 101 Cal.App.2d 831 [226 P.2d 662]; *Booth* v. *Booth,* 69 Cal. App.2d 496 [159 P.2d 93]; *Gavel* v. *Gavel,* 123 Cal.App. 589 [11 P.2d 654]; *Simmons* v. *Simmons,* 22 Cal.App. 448 [134 P. 791]) are not here in point. Those cases involved contests between parents over custody, not between a parent and a stranger.

█ Where a parent applying for custody is in a position to take the child and is not shown to be unfit, the court may not award custody to strangers merely because it feels that they may be more fit or that they may be more able to provide financial, educational, social, or other benefits. (*Roche* v. *Roche,* 25 Cal.2d 141, 144 [152 P.2d 999], citing *In re White,* 54 Cal.App.2d 637, 640 [129 P.2d 706]; *Becker* v. *Becker,* 94 Cal.App.2d 830 [211 P.2d 598].) █ "[T]he discre-

452

tionary power of a trial court necessarily is limited by those provisions of the code wherein the express policy of the Legislature regarding general questions of custody are set forth (Civ. Code, §§ 138, 197; Prob. Code, §§ 1407-1408) and by the judicial interpretation of those code provisions in relation to the specific questions presented by the instant case.'' (*Robertson* v. *Robertson*, 72 Cal.App.2d 129, 132 [164 P.2d 52].) Section 1407 of the Probate Code provides that as between persons equally entitled in other respects to the guardianship of a minor preference is to be given first to a parent. This section has been construed to be substantially the same as former section 246(3) of the Civil Code and section 1751 of the Code of Civil Procedure which provided, in substance, that a parent if competent is entitled to custody in preference to any other person. Section 138 of the Civil Code provides that as between parents adversely claiming the custody, neither parent is entitled to it as of right, but other things being equal, if the child is of tender years it should be given to the mother; if it is of an age to require education and preparation for labor and business, then to the father. ▮ The code sections contemplate that the care of a minor child be awarded to a parent, if a fit and proper person, as against a stranger. (*Roche* v. *Roche, supra,* 25 Cal.2d 141; *Stever* v. *Stever, supra,* 6 Cal.2d 166; *Guardianship of Sloot,* 92 Cal.App.2d 296 [206 P.2d 862]; *In re White,* 54 Cal.App.2d 637 [129 P.2d 706]; *Eddlemon* v. *Eddlemon,* 27 Cal.App.2d 343 [80 P.2d 1009].)

▮ Respondents further argue that to support a modification of a custody order a change of circumstances must be shown (*Smith* v. *Smith,* 85 Cal.App.2d 428 [193 P.2d 56]) and that the burden of proof is on the moving party to satisfy the court that conditions have so changed as to justify modification. (*Johnson* v. *Johnson,* 72 Cal.App.2d 721 [165 P.2d 552].) The rule announced in those cases is not applicable in this proceeding where no adjudication of unfitness of the only parent seeking custody has been made. ▮ However, if a change in circumstances were required, the record indicates that petitioner has made a sufficient showing of such a change. She has shown a congenial remarriage; financial ability to provide for the children; the maintenance of a suitable home; a desire and willingness by the stepparent to have the children in his home; and ability to provide for them the parent-and-child relationship.

■ It is true that a change of custody of children may entail "serious emotional disturbance." The courts are concerned with avoiding these distresses and are given wide discretion within the law in the determination of such matters.

■ The Supreme Court of the United States has well pointed out the guiding principle in custody cases in *Prince* v. *Massachusetts*, 321 U.S. 158 [64 S.Ct. 438, 88 L.Ed. 654]. It is there said at page 166: "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. (Citations.) And it is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter." ■ Here the divorce proceedings gave the state, through its courts, the right to determine the custody of the children. ■ The original determination of custody by the court was in accord with the agreement of the parents themselves to place custody in strangers with certain limitations. Those limitations have now been removed. The agreement anticipated that there might be in the future a contest concerning the fitness of the one asserting a right to the custody of the children. That contest developed in this case. The issue of fitness should be tried out in the usual way with evidence and findings on the subject. In the absence of sufficient evidence and a finding of unfitness on the part of the parent seeking custody, the law of preference should take its course.

The order is reversed.

Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. As I have attempted to make clear in my dissents in *Roche* v. *Roche* (1944), 25 Cal.2d 141, 144-149 [152 P.2d 999], and *Guardianship of Smith* (1953), *(Cal.) 255 P.2d 761, 767-771, neither the law, reason, justice, nor socially desirable consequences require that a child's natural parents be branded in a public and permanent judicial record as "unfit" before custody (always temporary and subject to change, as a matter of law) can be awarded to one not a parent. On the contrary, such a finding will in many cases only result in unnecessary and irreparable harm to both parent and child.

---

*A rehearing was granted on May 14, 1953.

It is a matter of common knowledge, proven over and over again in the annals of experience, that often the award of custody of a child to a person other than the natural parent will not only safeguard the child and advance his temporal, moral, and other interests for the time being but will also exercise a sobering and beneficial influence on warring parents who have but temporarily lost perspective on the relative values of some of the closest of human relationships.

Here, from the terms of the agreement of the parents, made at the time of, or preceding the divorce, it is apparent that intelligent and loving consideration, on the part of some one, was at that time given to the welfare of the children, and that the parents and children received the benefit of enlightened legal advice. The best interests of the children apparently were then given paramount effect. This was as it should be, and as our Legislature has enacted. Whether or not one of the parents has merely suffered a change of mind, or whether or not the best interests of the children admit of a change of custody, are questions for the trial court. Findings, unless waived, should specify where the best interests of the two children who are the subject of this proceeding lie, and the custody order should be made accordingly. But the matter should be determined on that basis and not on any theory of Divine—or mercenary—parental right. We should not in any event, in a case such as this, presume a wisdom and a power superior to the Legislature and strike down its direction that the interests of the children, rather than of a parent, be paramount in custody awards. Nor should we gratuitously add to the burdens of these children and their parents a court-made requirement that either the best interests of the children must be disregarded or the parents branded as "unfit."

Gibson, C. J., concurred.

Respondent's petition for a rehearing was denied September 24, 1953. Gibson, C. J., and Schauer, J., were of the opinion that the petition should be granted.