[Civ. No. 10604.   Third Dist.   July 2, 1963.]

Guardianship of the Persons and Estates of KARYON CLARK et al., Minors.   BEN RANDOLPH et al., Petitioners and Respondents, v. ROBERT CLARK, Contestant and Appellant.

Samuel R. Friedman for Contestant and Appellant.

Burton & Hennessy and Fred W. Burton for Petitioners and Respondents.

FRIEDMAN, J.—Robert and Mary Clark were the parents of the four minor daughters whose guardianship is here in dispute. Living with them was Jacqueline Forester, a child of Mrs. Clark by a former marriage. Jacqueline's guardianship is not in issue.

Mr. and Mrs. Clark resided in San Jose, then moved to Santa Paula. Their marriage was not a happy one. There is some evidence of drinking habits on the part of both, as well as evidence of extramarital affairs on the part of Mrs. Clark. On several occasions during 1960 and 1961 Mrs. Clark absented herself from the home for several weeks at a time. In May 1961 she returned from one such absence and took the children from the home without her husband's knowledge. After some inquiry he ascertained that she had taken the children to the home of a sister in Arlington, Riverside County. Mr. Clark went to Arlington in company with his sister, Mrs. Dallachie, to see his children. Mr. Clark and Mrs. Dallachie were greeted by Mrs. Clark, who struck Mrs. Dallachie several times, and by Mrs. Clark's sister, who threatened them with a rifle. Mrs. Clark told her husband to leave, that he was never to return, that she wanted no support from him and that she was returning to her ex-husband. Mr. Clark left. During the ensuing months he wrote several letters to his children and sent birthday cards. He was unsuccessful in several attempts to visit the children. He provided no financial support to the children during the period following the final separation. He was unemployed for about nine months and suffered some poor health.

In May 1962 Mrs. Clark was killed in an automobile accident. Robert Clark did not learn of her death until some time later. Charlene Randolph, sister of Mrs. Clark, attended the funeral with her husband, Ben Randolph. After the funeral Mr. and Mrs. Randolph took the children to their home in Etna, Siskiyou County. Also living in Etna is Greta Mardock, mother of Mrs. Clark and of Mrs. Randolph.

Mr. Clark was living in Lancaster, Los Angeles County, with his sister, Mrs. Dallachie. When he learned of his wife's death he drove to Etna for the purpose of securing his children. He succeeded in getting the two younger children and returned with them to Lancaster. The two elder children remained in Etna.

Mrs. Mardock and Mrs. Randolph, respectively the maternal grandmother and aunt, then instituted the present guardianship proceeding, seeking the appointment of themselves as guardians of Jacqueline Forester and the four Clark children. The latter were named as Karyon, age 14, Linda, 13, Bonnie, 9, and Georgia, 4. Robert Clark filed an affidavit in the proceeding, averring his own willingness and ability to care for his children and requesting denial of the Mardock-Randolph petition. At that point Ben Randolph, through the same attorneys who had appeared for Mrs. Mardock and Charlene Randolph, filed a ''supplemental petition'' seeking his own appointment as guardian. This latter petition was stricken on motion of Robert Clark.

A hearing was held and evidence taken as to the family history and the kind of environment and care which were available at the hands of the contending relatives. For reasons which will be apparent, it is not necessary to summarize the evidence on the latter point. █ Following the hearing the trial court entered an order designating a guardian. The order set forth a single finding of fact, reading as follows: ''The Court finds that BEN RANDOLPH is a fit and proper person to be appointed guardian of all five of said minors.'' The order then designated Ben Randolph as guardian of the persons and estates of the children. Robert Clark appeals.

Applicable statutes may be summarized as follows: Upon the death of one of the parents of a legitimate unmarried minor, the surviving parent is entitled to custody (Civ. Code, § 197). In appointing a general guardian, the court is to be guided by the best interests of the child; the court may consider the preference of a child old enough to form an intelligent preference; a child over 14 years of age may nominate his own guardian, who must be appointed if approved by the court (Prob. Code, § 1406). In the appointment of a general guardian, a parent is first in order of preference (Prob. Code, § 1407; see *Stewart* v. *Stewart,* 41 Cal.2d 447 [260 P.2d 44] at p. 452). A parent who abandons or who, although able, fails to maintain his minor child under 14 forfeits all right to guardianship of the child (Prob. Code, § 1409).

█ Judicial interpretation of these statutes has resulted in the rule that a parent is presumptively a fit person to have custody of his own child; that a court may award custody to a nonparent only where the parent is found to be

unfit. (*Stewart* v. *Stewart, supra,* 41 Cal.2d at pp. 451-452; *Roche* v. *Roche,* 25 Cal.2d 141, 143 [152 P.2d 999]; *Guardianship of Smith,* 147 Cal.App.2d 686, 692-693 [306 P.2d 86].) The nonparent has the burden of proving the parent's unfitness. (*Guardianship of Smith, supra,* 147 Cal.App.2d at p. 693.) ■ When an award of custody to a stranger is premised on the parent's unfitness, the latter may insist on a finding on that score. (*Stewart* v. *Stewart, supra,* 41 Cal. 2d at p. 451; *Stever* v. *Stever,* 6 Cal.2d 166, 170 [56 P.2d 1229]; *Guardianship of Riley,* 72 Cal.App.2d 742, 746-747 [165 P.2d 555].)

■ While the "parental preference" rule has been vigorously criticized by dissenting opinions in some of the cited cases, this intermediate appellate court is bound by it. (See *Guardianship of Turk,* 194 Cal.App.2d 736, 740-741 [15 Cal. Rptr. 256].)

■ These judicially stated doctrines deal only with the subject of fitness or unfitness as a factor in parental displacement. In addition, abandonment is a statutory factor which may cause rejection of the "parental preference" concept. In order to invoke Probate Code section 1409 as a ground for awarding guardianship to a stranger, the court must make a finding of abandonment.

■ In this case the trial court found only that Ben Randolph, a nonparent, was a fit person. The court did not find that Robert Clark, the father of these children, was unfit or that he had abandoned his children or any of them. Consequently its designation of Randolph cannot stand.

One more aspect of the matter should be mentioned. During the course of the hearing Karyon (who had reached her 14th birthday) was asked if she had a preference as to where she lived. She replied that she preferred to stay with her aunt and uncle. Cross-examination indicated that she had some feeling of hostility for her father, derived partly from an instance of parental discipline and partly from an incident featuring a physical altercation between her father and mother after the latter had been out with another man. It does not appear that counsel elicited Karyon's statement of preference as a formal nomination under Probate Code section 1406. The record does not reveal any effort to inform Karyon of her right to make such a nomination or of its effect. If, in the course of further proceedings necessitated by our order, there is to be a statutory nomination, the findings should so indicate,

The order granting letters of guardianship is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Pierce, P. J., and Schottky, J., concurred.