L. CHARLES WRIGHT, Retired Appellate Judge.
Following a hearing in October 1987, the Tallapoosa Juvenile Court terminated the parental rights of Bobbie Ennis Brooks to her seven-month-old child, Jessica Renae Brooks. Permanent custody was awarded to the Department of Human Resources (DHR). The mother appeals.
The issue on appeal is whether there was clear and convincing evidence before the trial court to warrant the termination of parental rights.
We recognize that, though parents have a prima facie right to the custody of their child, that right is secondary to the paramount consideration in custody cases — the best interests and welfare of the child. Miller v. Alabama Department of Pensions & Security, 374 So.2d 1370 (Ala.Civ.App.1979). This court has previously stated that
“In determining what is in the best interests of a child, a trial court considers numerous factors including the sex and age of the child, the child’s emotional, social, moral, material, and educational needs, the parties’ age, character, stability, health, and home environments, the interpersonal relationship between the child and the parties, the effect on the child of a disruption of the custody arrangement, and the parties’ success in raising other children.”
Johnson v. Sparks, 437 So.2d 1308, 1309 (Ala.Civ.App.1983).
The record reveals that Jessica was one month old when she was picked up by DHR in April 1987, after the mother and she were involved in an automobile accident. This accident occurred when the mother and the stepfather’s wife (Cecilia Guthrie) had taken the mother’s stepfather’s (Jessie Guthrie) car to look for a Mr. Larry Hand-ley and his nephew. They were gone overnight with Jessica. Mr. Guthrie had a theft warrant issued because they had taken the car without his permission. DHR had received a child abuse and neglect report on Jessica just prior to the automobile accident.
The DHR social worker testified that DHR began working with the mother in March 1985. The mother has two older children, Steven Wayne Ennis and Gina Renae White. Permanent custody of these two children was previously awarded to DHR. See Brooks v. State Department of Human Resources, 513 So.2d 632 (Ala.Civ.App.1987). The mother testified that she did not understand why Steve and Gina had been taken from her.
At the time of the hearing, the mother, at twenty-three years of age, was expecting her fourth child. Each of the four children has a different father. The mother has never been employed. She has never had a home of her own, but has lived with her stepfather and many others from time to time. She plans to continue living with her stepfather. Her natural mother is deceased.
The DHR social worker testified that she has not seen any change in the mother’s lifestyle since DHR began working with her. After Jessica was removed from her custody in April 1987, the mother signed an agreement with DHR. She agreed to stay in the same house for six weeks and to visit with Jessica regularly, and she agreed neither to drink alcoholic beverages, smoke marijuana, nor to have so many men coming in and out of the home. The DHR worker testified that the mother complied with this agreement for approximately one month. DHR was unable to locate the mother between June 9, 1987, and July 7, *595 1987. Jessie Guthrie testified that the mother was arrested and placed in jail on June 18, 1987, after she was involved in a fight with “Larry Handley’s nephew’s wife.”
The mother called DHR from Pensacola, Florida, on July 7, 1987, and, thereafter, she would call the DHR worker periodically. The DHR worker stated that the mother made twelve different moves since April 1987, and these moves could be documented by these telephone calls. On July 15, 1987, the DHR worker was visiting in the Guthrie home and observed the mother packing her bags and leaving with two men. The mother returned to her stepfather’s house in Alabama in late September or early October of 1987.
Jessie Guthrie, the mother’s stepfather, testified at the hearing. He was questioned about the numerous telephone calls documented by DHR in mid-1987 that he made, complaining about the mother, her various activities, and her male companions. Guthrie remembered making some of the calls, but denied making some, even though they had been logged by DHR.
Section 26-18-7, Ala.Code (1975) (1986 RepLVol.), sets out some of the factors which the court may consider when determining whether to terminate an individual’s parental rights. Two such factors are
“That reasonable efforts by the department of human resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.”
Ala.Code (1975), § 26-18-7(a)(6), and
“Lack of effort by the parent to adjust his circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.”
Ala.Code (1975), § 26-18-7(b)(4).
It appears that all attempts at rehabilitation have failed. The mother entered into an agreement with DHR; however, she failed to comply with the agreement except for a short period of time.
The record reveals that DHR sought less drastic alternatives, but was unable to locate any.
After reviewing the record, we find that the trial court’s decision is supported by clear and convincing evidence. McCullough v. State Department of Pensions & Security, 500 So.2d 1093 (Ala.Civ.App.1986). This case is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama of 1975. This opinion is hereby adopted as that of the court.
AFFIRMED.
HOLMES and INGRAM, JJ., concur.
BRADLEY, P.J., concurs in the result.