**ILAISA TAPENI, Appellant,**

**v.**

**AUSAGE TAPENI, Appellee.**

High Court of American Samoa
Appellate Division

AP No. 12-00

December 16, 2002

Before RICHMOND, Associate Justice, WALLACE,[*] Acting Associate Justice, MOLLWAY,[**] Acting Associate Justice, MAMEA, Associate Judge, and TUPUIVAO, Associate Judge.
Counsel: For Appellant, Virginia Lynn Sudbury & David M. Wagner
        For Appellee, Deanna S.F. Sanitoa

## OPINION AND ORDER

Appellant Ilaisa Tapeni ("Ilaisa") is appealing an order concerning the custody of three of the parties' children. Ilaisa, the mother of the three children, contends that the trial court abused its discretion in finding that the three children should remain in Hawaii in the custody of the sister of Appellee Ausage Tapeni ("Ausage"), the father, without a formal finding of Ilaisa's incompetence as a parent. Ilaisa also contends that the court considered several school records and accompanying letters from Hawaii that were not properly entered as evidence. Ausage filed his brief on the day of the appellate argument. However, we chose to accept the filing and allow his attorney to argue because of the greater importance of the children's well-being.

For the reasons discussed below, we remand this action to the trial court.

---

[*] The Honorable J. Clifford Wallace, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.
[**] The Honorable Susan Oki Mollway, United States District Court Judge for the District of Hawaii, serving by designation of the Secretary of the Interior.

## Factual Background

The parties were married in 1982. Ilaisa petitioned for a legal separation in 1992 and for divorce later the same year. She was granted a divorce in 2000. The parties were then given joint legal custody of their children until the custody issue was determined. After further hearings, the trial court made its determination on July 20, 2000. Ilaisa appeals this order as it pertains to the custody of the parties' three children given to Ausage's sister and her husband in Hawaii.

Five children are the issue of the marriage. The parties permitted Ausage's brother in Hawaii to raise the youngest child from shortly after the child's birth. In 1992, the four other children resided with Ausage and his new female companion. The parties agreed, however, to a shared custody arrangement between Ilaisa and Ausage's parents for these four children. Ilaisa then changed her separation petition to one for divorce. The parties reconciled and apparently lived together with the four children. However, in 1997, Ilaisa elected to pursue the divorce due to Ausage's extramarital affairs.

By the time of the trial in March 2000, it appears that Ausage's parents were exclusively caring for the second youngest child in American Samoa. The remaining three older children were then living with Ausage's sister and her husband in Hawaii. Ilaisa went there, planning to stay in Hawaii with the three children and her new male companion. However, as a citizen of independent Samoa without proper documentation, she was denied entry or was soon expelled by U.S. immigration officials. She left the children with her new friend. The friend, however, was accused of sexually molesting one of the three children a short time later. Since then, Ausage's sister and her husband have cared for these children in Hawaii.

On July 20, 2000, the trial court concluded that the five children's interests were best served by the existing custodial situations and ordered the status quo continued. The parties agreed, and the court found, that the second youngest child's best interests were served by maintaining his living arrangement with Ausage's parents. The court also found that the three children with Ausage's sister and her husband and the one with Ausage's brother in Hawaii lived in securely settled circumstances. The court reasoned that the children's present situation had been entirely of their parents' own making, as the parties had either surrendered their children to, or shared their care with, relatives. Furthermore, the court found that the three older children and the youngest had become well ensconced in their off-island surroundings. Although the court did not find either party unfit to have custody, it expressed reservations about either party's fitness to assume exclusive custody. Finally, the court

found that the only purpose served by returning the children in Hawaii to American Samoa would be to accommodate Ilaisa's important but not overriding right of access to her children.

The court mentioned that Ilaisa's access concerns could be alleviated through the exercise of reasonable visitation rights, but that "such options" needed further development by the parties or by further evidentiary inquiry.[1]

### Standard of Review

■Child custody issues are within the trial court's discretion, and its decision will not be disturbed on appeal unless it has abused that discretion. *See, e.g., Thorpe v. Jensen*, 817 P.2d 387, 389 (Utah 1991); 24A AM. JUR. 2D *Divorce and Separation* § 929 (1998) (and cases cited therein).

### Discussion

A. Applicability of the Parental Custody Right Doctrine

■ The cornerstone of any custody proceeding is the determination of what is in the best interest of the child. *See Brooks v. State Dep't of Human Res.*, 526 So. 2d 593, 594 (Ala. Civ. App. 1988); *In re Custody of Townsend*, 427 N.E.2d 1231, 1234 (Ill. 1981); *Johnson v. Pinder*, 269 A.2d 511, 512 (Pa. Super. Ct. 1970). When the dispute over custody is between the two natural parents, no presumption arises as to who should get custody; both parents "start[ ] out on equal footing." *Townsend*, 427 N.E.2d at 1235. Indeed, "[a]lthough a mother is the natural custodian of her young," a court must weigh many factors to determine which arrangement would best suit the child. *Aumavae v. Aumavae*, 27 A.S.R.2d 164, 167 (Trial Div. 1995) (citations omitted).

■ When the custody dispute over the child arises between a parent, or parents, and a third party, the test remains the same—which custody arrangement would most nurture the best interest of the child. A court is not without guidance though. The Due Process Clause of the Constitution protects parents' fundamental liberty interest "in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion); *see also Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). Due process requires a presumption that the "natural

---

[1] On December 1, 2000, the trial court ordered, upon the parties' stipulation, a program for Ilaisa's weekend visitations with the second youngest child residing with Ausage's parents in American Samoa.

bonds of affection lead parents to act in the best interests of their children." *Troxel*, 530 U.S. at 68 (quoting *Parham v. J.R.*, 442 U.S. 584, 602 (1979)). A natural parent is presumed to be fit, and the burden lies on the third party to prove the contrary. *Townsend*, 427 N.E.2d at 1235; *Matter of Welfare of A.J.C.*, 556 N.W.2d 616, 619-20 (Minn. Ct. App. 1996); *In Interest of K.R.A.G.*, 420 N.W.2d 325, 327 (N.D. 1988); *Patrick v. Byerley*, 325 S.E.2d 99, 101 (Va. 1985). Therefore, a fit natural parent is *prima facie* entitled to custody of his or her child. *See Stanley v. Illinois*, 405 U.S. 645, 652 (1972); *Brooks*, 526 So. 2d at 594; *Townsend*, 427 N.E.2d at 1236.

There is a split of authority, however, as to whether a fit parent's entitlement to custody may be rebutted. The parental custody right doctrine, simply stated, instructs that "[o]nce the natural parent is deemed fit, the issue of custody is decided." *Moore v. Moore*, 386 S.E.2d 456, 458 (S.C. 1989) (quoting *Kay v. Rowland*, 331 S.E.2d 781, 782 (S.C. 1985)); *see also Roche v. Roche*, 152 P.2d 999, 1000 (Cal. 1944). On the other hand, there is authority that the presumption created in favor of fit parents, and the rights incident to them, must nonetheless yield to the best interest of the child. *See Townsend*, 427 N.E.2d at 1236; *De La Hoya v. Saldivar*, 513 S.W.2d 259, 261 (Tex. Civ. App. 1974) (citing *Duckworth v. Thompson*, 37 S.W.2d 731 (Tex. Civ. App. 1931)). The issue is of first impression at the appellate level in American Samoa.

Ilaisa urges us to adopt the parental custody right doctrine and require a finding that the parents are unfit before a child's custody can be properly given to a third party. This doctrine, however, has been severely criticized. *See Roche*, 152 P. 2d at 1000 (Schauer, J., dissenting). The thrust of the criticism is that by presumptively treating the rights of fit parents as paramount as against any third party, this approach tends to treat a child as a chattel and insulate the practical and proper emphasis on the child's welfare from fully open consideration. *Id.* "[E]ven a fit parent is capable of treating a child like a mere possession." *Troxel*, 530 U.S. at 86 (Stevens, J., dissenting). Our trial courts have implicitly embraced this reasoning and have regularly applied a pure best-interests test, recognizing that custody is always immediate and subject to change, and taking into account the full range of current circumstances. *See generally In re a Minor Child*, 28 A.S.R.2d 33 (Trial Div. 1995) (applying California law); *In re Two Minor Children*, 26 A.S.R.2d 117 (Trial Div. 1994); *In re a Minor Child*, 26 A.S.R.2d 105 (Trial Div. 1994). Indeed, the statute applicable for determining child custody in marital dissolution proceedings states that the court "may . . . order for the custody . . . of the minor children of the parties," A.S.C.A. § 42.0210, and may be broadly interpreted as supporting a best-interests test without resort to the parental custody right doctrine.

██ We are persuaded by the criticism voiced against the parental custody right doctrine. We therefore approve the trial court's approach to child custody issues generally and in this case particularly. That is, we sanction application of the best-interests test in child custody issues in marital dissolution proceedings. Nevertheless, when the custody dispute is between the natural parents and a third party, fit parents are entitled to a presumption of custody. This presumption, however, is rebuttable. If the parent's fitness is not rebutted, "[t]he burden of proof upon the issue of the best interest of the child is upon the one seeking to deprive the natural parents of custody." *Hoya*, 513 S.W.2d at 262 (quoting *Herrera v. Herrera*, 409 S.W.2d 395, 396 (Tex. 1966)); *accord Townsend*, 427 N.E.2d at 1237.

Ilaisa's concern over the importance of children being near their natural parents is understandable, but her concerns do not override consideration of the entire surrounding circumstances in determining the three children's best interests when awarding custody. The value of having a child's natural mother or father as an active participant in the child's upbringing is always an important aspect of the best-interests analysis. When a third party is given custody of a child, parental visitation rights become important. A parent's interest in keeping a child must not allow a court to overlook what is truly in that child's best interests.

In this case, the trial court seems to have applied a best-interest standard. It is not clear, however, whether it properly applied the burdens of proof and persuasion we have articulated. While there may have been enough evidence to overcome the presumption of the parent's right to custody, we cannot make that finding for the first time on appeal. Therefore, we will remand the case for a rehearing.

B. The Evidence Considered

There is another issue in this case we should address since it is likely to arise at the rehearing. Ilaisa argues that the trial court utilized evidence inappropriately to make a custody order in favor of the three children's aunt and uncle. The present circumstances of the lives of the children in Hawaii was virtually unknown outside of a collection of school records found in a notarized letter, apparently sent by the aunt to the court by facsimile on May 9, 2000. The trial court relied heavily on these records in reaching its July 21, 2000, custody decision, stating that the records were "very encouraging and attest to a stable and nurturing environment provided the three older children." (Order at 3) Following this observation, the court commented that, "throughout their marriage, the parties had either surrendered their children to, or shared their care with, relatives. Thus the children's present situation has been entirely of their parents own making, such that the three older [children] and the youngest

have become well ensconced in their off-island surroundings." (Order at 4)

■ It is imperative that a trial court have complete information in making a best-interest determination on child custody issue. In this light, a trial court can properly "resort to a wide range of out-of-court information in reaching its decision subject to the requirements that what is so considered be made available to all involved counsel for challenge, impeachment, criticism or refutation." *Sabol v. Sabol*, 624 P.2d 1378, 1382 (Haw. Ct. App. 1981). The person or persons responsible for the report should ordinarily be available for cross-examination. *Cf. id.* Upon objection, evidence otherwise inadmissible would be admissible only on the custody and certainly not on other issues. *Id.*

American Samoa does not have an express statutory authorization for judicial consideration of out-of-court information applicable to child custody issues between private parties in marital dissolution proceedings. It does have express statutory authorization to use such information in proceedings under the juvenile justice laws. A.S.C.A. § 45.0130(b) & (c). The statute states the principle in language to the same substantive effect as before framed by the court in *Sabol*.[2]

■ It might be argued that section 45.0130(b) and (c) apply to child custody issues in marital dissolution proceedings. However, given the language detailing the trial court's original jurisdiction in juvenile proceedings involving a minor child who is allegedly delinquent, in need of supervision, or neglected or dependent, under specific and rigid

---

[2] A.S.C.A. § 45.0130(b) & (c) reads:
   (b) For the purpose, of determining proper disposition of a child, written reports and other material relating to the child's mental, physical, and social history may be received and considered by the court along with other evidence; but the court, if so requested by the child, his parent or guardian, or other interested party, shall require that the person who wrote the report or prepared the material appear as a witness and be subject to both direct and cross-examination. In the absence of the request, the court may order the person who prepared the report or other material to appear if it finds that the interest of the child, his parent or guardian, or other party to the proceedings so requires.
   (c) The court shall inform the child, his parent or legal guardian, or other interested party of the right of cross-examination concerning any written report or other material as specified by subsection (b).

definitions not readily applicable in the marital dissolution context, A.S.C.A. § 45.0115, we decline to interpret the applicability of section 45.0130(b) and (c) so broadly. Nonetheless, apparently as the *Sabol* court did in construing Hawaii statutes, we interpret section 45.0130 as sufficiently broad to enable the trial court to consider out-of-court information subject to the safeguards for challenge. Even without any statutory authority, we hold that the trial court has inherent authority to consider such information in this manner for child custody issues in marital dissolution proceedings.

During the trial of this case, the court invited the submission of other information from Hawaii. (Trial Tr. 38) In due course, the court received and considered this information. The information from Hawaii was clearly a critical factor underlying the trial court's present custody determination. The court did not, however, advise the parties that it was considering this information nor give them opportunity to challenge, impeach, criticize, or refute it by cross-examination or other means. The court's consideration of this out-of-court information in this fashion was error.

## Order

We remand this action to the trial court for a rehearing to be conducted consistently with this opinion.

It is so ordered.